**FILED**

October 08, 2010

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0002988609

**10**

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
J.P. FRITZ (SBN 245240)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com; jp@lnbyb.com

Attorneys for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## (SACRAMENTO DIVISION)

| | |
|---|---|
| In re:<br><br>MATTERHORN GROUP, INC.,<br><br>　　　Debtor.<br>――――――――――――――――<br>VITAFREZE FROZEN CONFECTIONS, INC.,<br><br>　　　Debtor.<br>――――――――――――――――<br>DELUXE ICE CREAM COMPANY,<br><br>　　　Debtor.<br>――――――――――――――――<br>☒ Affects ALL DEBTORS<br>☐ Affects only MATTERHORN GROUP, INC.<br>☐ Affects only VITAFREZE FROZEN<br>　　　　CONFECTIONS, INC.<br>☐ Affects only DELUXE ICE CREAM COMPANY | Lead Case No. 10-39672 (MSM)<br>Jointly Administered with Case Nos. 10-39664 (MSM), and 10-39670 (MSM).<br><br>DC No. LNB-16<br><br>Chapter 11 Cases<br><br>**DEBTORS' MOTION FOR AN ORDER: (1) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS (EXCLUDING CASH AND AVOIDANCE CAUSES OF ACTION) FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS; (2) APPROVING DEBTORS' ASSUMPTION AND ASSIGNMENT AND REJECTION OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND DETERMINING CURE AMOUNTS; AND (3) WAIVING THE 14-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d)**<br><br><u>Hearing:</u><br>Date:　　November 8, 2010<br>Time:　　10:00 a.m.<br>Place:　　Department A<br>　　　　　Judge Michael S. McManus<br>　　　　　Courtroom No. 28<br>　　　　　Floor No. 7<br>　　　　　Robert T. Matsui Courthouse<br>　　　　　501 I Street |

SALE MOTION

**10**

Sacramento, CA 95814

SALE MOTION

**10**

Matterhorn Group, Inc. ("MGI"), Vitafreze Frozen Confections, Inc. ("Vitafreze"), and Deluxe Ice Cream Company ("Deluxe"), the debtors and debtors in possession in the above-captioned, jointly administered Chapter 11 bankruptcy cases (collectively, the "Debtors"), hereby file this Motion (the "Motion"): (i) for authority to sell substantially all of their assets (excluding cash and avoidance causes of action) to the winning bidder at an auction sale to be conducted on November 1, 2010 (or to the winning backup bidder if the winning bidder fails to close in a timely manner) free and clear of all liens, claims and interests in accordance with the form of asset purchase agreement which is being filed concurrently herewith as Exhibit "2", subject to any changes to the asset purchase agreement which are acceptable to the Debtors and the winning bidder; (ii) seeking to have the winning bidder (or to the winning backup bidder if the winning bidder fails to close in a timely manner) to be found to be a good faith buyer entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code; (iii) for approval  (effective as of the date of the sale closing) of the Debtors' assumption and assignment to the winning bidder (or to the winning backup bidder if the winning bidder fails to close in a timely manner) of all of the Debtors' executory contracts (excluding any collective bargaining agreements or other union contracts which are being dealt with in a separate motion) and unexpired leases which the winning bidder (or to the winning backup bidder if the winning bidder fails to close in a timely manner) desires to have assigned to it in connection with the sale closing; (iv) for a finding by the Court that the cure amounts which must be paid in connection with the Debtors' assumption and assignment of any of their executory contracts (excluding any collective bargaining agreements or other union contracts which are being dealt with in a separate motion) and unexpired leases are as set forth in exhibit "1" filed concurrently herewith and find that adequate assurance of future performance has been demonstrated, and order that any party that fails to file a timely objection to this Motion shall be deemed to have consented to the Debtors' proposed cure amount and be

**10**

forever barred from challenging the Debtors' proposed cure amount or from asserting any claims on account of cure costs against the winning bidder (or to the winning backup bidder if the winning bidder fails to close in a timely manner); (v) for approval (effective as of 11:59 p.m. on the date of the sale closing) of the Debtors' rejection of all of the Debtors' executory contracts (excluding any CBA's or other union contracts which are being dealt with in a separate motion) and unexpired leases which are not assumed and assigned to the winning bidder (or the winning backup bidder if the winning bidder fails to close) unless otherwise identified by the Debtors in a writing filed with the Court prior to the sale closing; (vi) for entry of a sale order in a form substantially in conformity with the version of the proposed order filed concurrently herewith as Exhibit "3", subject to such changes which are agreed to by the Debtors and the winning buyer (or the winning backup bidder if the winning bidder fails to close); (vii) for a waiver of the 14-day stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d); and (viii) for such other and further relief as the Court deems just and proper.

The complete bases for this Motion are set forth in the Memorandum of Points and Authorities and Declarations filed in support of this Motion.

The Debtors commenced their bankruptcy cases by filing voluntary petitions under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on July 26, 2010 (the "Petition Date"). The Debtors continue to operate their business, manage their financial affairs, and operate their bankruptcy estates as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

MGI was formed in 2004 as a vehicle to "roll-up" frozen novelty manufacturing companies in the Western United States. The initial step in this strategy was MGI's acquisition of

**10**

Vitafreze, Deluxe, and Matterhorn Ice Cream Company ("Matterhorn"),[1] each of which became wholly owned subsidiaries of MGI. As a result of these acquisitions, by 2005, the Debtors had (1) established themselves as high-quality, high-service private label manufacturers with a strong Western United States customer base, and (2) become one of the dominant producers of ice cream novelties in the Western United States.

In 2006, in an effort to improve operations and profitability, MGI (1) closed Matterhorn's manufacturing plant in Caldwell, Idaho and consolidated its manufacturing into Vitafreze, located in Sacramento, California, and Deluxe, located in Salem, Oregon, and (2) took aggressive steps to restructure its remaining operations to reduce overhead and reposition MGI with its customers and suppliers. The Debtors' administrative office is located in Las Vegas, Nevada.

At present, the Debtors, which have approximately 31 non-union employees and 226 union employees, are collectively one of the largest independent producers of ice cream and water-ice novelty products in the United States. The Debtors manufacture (1) self-branded products for grocery retailers, (2) products from brand licenses held by the Debtors, such as Mike and Ike™, HotTamales™, and Zours™ popsicles, (3) co-branded products, and (4) the Debtors' own products, including the Debtor's Oh My! Goodness™ branded products. The Debtors' customers include large regional and national retailers, club stores, and independent cooperative distribution companies in the United States. The Debtors also sell to various retailers in Mexico.

The Debtors' primary secured creditor is Key Bank, N.A. (the "Bank"). As of the Petition Date, Key Bank was owed approximately $10.5 million, which the Bank contends is secured by a first priority lien against substantially all of the Debtors' assets. As explained in more detail

---

[1] Matterhorn is also a wholly owned subsidiary of MGI. Matterhorn is not operating and has not filed a bankruptcy case.

**10**

below, the Debtors and the Bank have reached an overall settlement agreement which provides

for an allocation of the assets of these estates following the closing of a sale of the Debtors'

assets.  A hearing is scheduled to be held on October 25, 2010 for the Court to consider approval

of that settlement agreement.

During the period of 2007 through 2009, the Debtors gross revenues increased

substantially from approximately $42,564,029 in 2007, to approximately $47,986,399 in 2008, to

approximately $54,436,328 in 2009.  However, due to expansion into new product categories,

increased costs related thereto, a delayed selling season due to unusually cool temperatures in the

Debtors geographical market and the continued need to make capital expenditures to maintain the

Debtors' manufacturing facilities, these increases in gross revenue did not result in corresponding

increases in net income and liquidity.  Instead, based on the foregoing and seasonal fluctuations in

the Debtors' business and borrowing limits under the Bank loans, the Debtors found themselves

in a cash crunch and were unable to meet their funding needs solely from advances made by the

Bank.  In consideration of the Debtors' ongoing cash crunch and the need for breathing room to

formulate and implement a restructuring plan or a sale, the Debtors came to the conclusion that

filing for bankruptcy protection was in the best interests of the Debtors and their creditors.

Since the Petition Date, the Debtors have been using cash collateral in accordance with

four prior orders which have been approved by the Court.  The Bank consented to the Debtors'

cash collateral use in connection with the first two orders.  The Bank filed a limited opposition to

the Debtors' third cash collateral motion because the Bank wanted the Debtors to agree to an

expedited sale process as a condition to the Debtors' continued use of cash collateral.

The Debtors made clear to the Bank and the Creditors' Committee from the outset of these

cases that before the Debtors would be in a position to agree upon an expedited sale process, the

Debtors first had to complete a one-year operating budget to determine if it was possible for the

Debtors to reorganize on a stand-alone basis or to remain in Chapter 11 for an extended period of time and operate solely through use of the Debtors' cash collateral. With the assistance of the Debtors' financial advisor, Sherwood Partners, LLC ("Sherwood"), several weeks ago the Debtors completed a comprehensive one-year operating budget and delivered a copy of that one-year budget to the Bank and the Creditors' Committee. What the one-year budget showed was that the Debtors could <u>not</u> survive economically on cash collateral use alone over the next year or even past the beginning of 2011. As a result, the only way for the Debtors to avoid a complete shut down and liquidation of their business is for the Debtors to consummate an expedited sale of their assets or to obtain millions of dollars of additional financing. Given the extent of the Debtors' debt structure, it is not possible for the Debtors to obtain the necessary additional financing to survive beyond the early part of 2011. The Debtors have therefore concluded that embarking on an expedited asset sale process is in the overwhelming best interests of the Debtors' estates and the only way to avoid a complete shut down and liquidation of the Debtors' business.

Given the fact that the Bank asserts a senior priority lien against all or substantially all of the assets that the Debtors will be seeking to sell, the only way for the Debtors to be able to sell their assets free and clear of the Bank's liens and claims is to do so with the Bank's consent or to embark in significant litigation with the Bank.

For the past several weeks, the Debtors and the Bank have engaged in extensive discussions regarding an asset sale process. The Debtors made clear to the Bank from the outset that the Debtors would not be willing to embark upon a consensual and expedited sale process unless the Debtors and the Bank were able to reach an agreement on (i) a minimum floor price that the Bank would consent to in order to make sure that the Debtors actually consummated a sale given the disruption to the Debtors' business operations from engaging in such a sale process, and (ii) an allocation of the sale proceeds which benefited creditors other than the Bank in a

**10**

material manner and which the Debtors believed was an equitable result under the circumstances. Fortunately, the Debtors and the Bank were able to reach such an agreement, which is memorialized in a settlement agreement which will be considered for approval by the Court at a hearing to be held on October 25, 2010.

At a hearing held on October 4, 2010, the Court approved various sale procedures in connection with a pending auction sale of the Debtors' assets, which procedures were agreed to by the Debtors, the Bank and the Creditors' Committee. The actual auction sale will take place on Monday, November 1, 2010. At the hearing on November 8, 2010, the Debtors will request the Court to approve their sale of assets to the winning bidder at the auction sale (or to the winning backup bidder if the winning bidder fails to close in a timely manner). More details regarding the auction sale, the proposed settlement agreement with the Bank and this Motion can be found in the concurrently filed Memorandum of Points and Authorities and Declarations filed in support of this Motion.

WHEREFORE, the Debtors respectfully request that this Court

1.      approve the Debtors' sale of substantially all of their assets (excluding cash and avoidance causes of action) to the winning bidder at the auction (or to the winning backup bidder if the winning bidder fails to close in a timely manner) free and clear of all liens, claims and interests in accordance with the form of asset purchase agreement which is being filed concurrently herewith as Exhibit "2", subject to any changes to the asset purchase agreement which are acceptable to the Debtors and the winning bidder;

2.      find that the winning bidder (or to the winning backup bidder if the winning bidder fails to close in a timely manner) is a good faith buyer entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code;

**10**

3.      approve (effective as of the date of the sale closing) the Debtors' assumption and assignment to the winning bidder (or to the winning backup bidder if the winning bidder fails to close in a timely manner) of all of the Debtors' executory contracts (excluding any CBA's or other union contracts which are being dealt with in a separate motion) and unexpired leases which the winning bidder (or to the winning backup bidder if the winning bidder fails to close in a timely manner) desires to have assigned to it in connection with the sale closing;

4.      find that the cure amounts which must be paid in connection with the Debtors' assumption and assignment of any of their executory contracts (excluding any CBA's or other union contracts which are being dealt with in a separate motion) and unexpired leases are as set forth in exhibit "1" filed concurrently herewith and find that adequate assurance of future performance has been demonstrated, and order that any party that fails to file a timely objection to this Motion shall be deemed to have consented to the Debtors' proposed cure amount and be forever barred from challenging the Debtors' proposed cure amount or from asserting any claims on account of cure costs against the winning bidder (or to the winning backup bidder if the winning bidder fails to close in a timely manner);

5.      approve (effective as of 11:59 p.m. on the date of the sale closing) the Debtors' rejection of all of the Debtors' executory contracts (excluding any CBA's or other union contracts which are being dealt with in a separate motion) and unexpired leases which are not assumed and assigned to the winning bidder (or the winning backup bidder if the winning bidder fails to close) unless otherwise identified by the Debtors in a writing filed with the Court prior to the sale closing;

6.      enter an order in a form substantially in conformity with the version of the proposed order filed concurrently herewith as Exhibit "3", subject to such changes which are

**10**

agreed to by the Debtors and the winning buyer (or the winning backup bidder if the winning bidder fails to close);

7.     waive the 14-day stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d); and

8.     grant such other and further relief as the Court deems just and proper.

Date: October 8, 2010                                              LEVENE, NEALE, BENDER, YOO
                                                                             & BRILL L.L.P.

                                                                             */s/ Ron Bender*
                                                                             RON BENDER
                                                                             TODD M. ARNOLD
                                                                             J.P. FRITZ