FILED
October 18, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003008902

5

1   DOWNEY BRAND LLP
    JAMIE P. DREHER (Bar No. 209380)
2   AILEEN J. KIM (Bar No. 260860)
    621 Capitol Mall, 18th Floor
3   Sacramento, CA  95814-4731
    Telephone: (916) 444-1000
4   Facsimile: (916) 444-2100
    jdreher@downeybrand.com
5   akim@downeybrand.com

6   Attorneys for Official Committee
    of Unsecured Creditors
7

8               UNITED STATES BANKRUPTCY COURT

9               EASTERN DISTRICT OF CALIFORNIA

10                    SACRAMENTO DIVISION

11

12  In re:                              Lead Case No. 10-39672-A-11

13  MATTERHORN GROUP, INC.,             Jointly Administered with
                                        Case Nos. 10-39664 and 10-39670
14          Debtor.
                                        DC No. LNB-13
15
                                        Chapter 11 Cases
    VITAFREZE FROZEN
16  CONFECTIONS, INC.,

17          Debtor.                     **PRELIMINARY OPPOSITION
                                        TO DEBTORS' EMERGENCY
18                                      MOTION FOR AN ORDER
    DELUXE ICE CREAM                    APPROVING SETTLEMENT
19  COMPANY,                            AGREEMENT BETWEEN THE
                                        DEBTORS AND KEY BANK**
20          Debtor.

21  ☒ Affects ALL DEBTORS              Date:    October 25, 2010
    ☐ Affects only MATTERHORN GROUP,   Time:    9:00 a.m.
22      INC.                            Judge:   Michael S. McManus
    ☐ Affects only VITAFREZE FROZEN    Place:   Department A
23      CONFECTIONS, INC.                        Courtroom No. 28
    ☐ Affects only DELUXE ICE CREAM             Floor No. 7
24      COMPANY

25  / / /

26  / / /

27  / / /

28  / / /

1117982.2                       1

The Official Committee of Unsecured Creditors in the above-captioned cases (the "Committee"), hereby files this Preliminary Opposition to Debtors' Emergency Motion for an Order Approving Settlement Agreement Between the Debtors and Key Bank ("Settlement Motion"). This Opposition is based on the underlying Settlement Agreement that raises disconcerting questions about the Bank's claims calculation, potential lender liabilities, and unfair treatment of unsecured creditors. The Committee is currently in discussions with the Bank and the Debtors regarding the issues present in this Opposition. The parties are trying to work through these issues and the Committee may be in a position to support a revised Settlement Agreement by the time of the hearing on October 25, 2010.

Under the Settlement Agreement signed by and between the Key Bank, N.A. (the "Bank") and Matterhorn Group, Inc., Vitafreze Froze Confections, Inc., and Deluxe Ice Cream Company (collectively, the "Debtors"), the proposed distribution of the sale proceeds of the Debtors' assets appears to keep the Estates administratively solvent, but does not appear to result in any distribution to the unsecured creditors of the Debtors who are owed over $8,000,000.00, not including a potential deficiency claim by the Bank. Additionally, there are some questions regarding the lending relationship between the Bank and the Debtors that may potentially affect the fairness of the Settlement Agreement.

<u>Ultimate Recovery By The Bank Notwithstanding Potential Lender Liabilities</u>

The unsecured creditors of the Debtors are in a position of having extended unsecured credit to the Debtors whose financial situation turned out to be more precarious than previously represented to, or understood by the unsecured trade creditors. Due to the nature of the Bank's lending relationship with the Debtors, the Bank was in a position to understand the true financial health of the Debtors. Yet, it appears that the Bank continued to assist the Debtors in limping along and incurring unsecured credit to the current group of unsecured trade creditors. Despite continuous defaults by the Debtors, the Bank continued to forbear and extend credit to the Debtors.

Under the current version of the Settlement Agreement signed by the Bank and the Debtors, it does not appear that there will be any distribution to unsecured creditors in this

1117982.2

2

case, unless both the sale price achieved at the § 363 sale and the avoidance actions result in "home runs" for the Estates.  Therefore, the Committee is opposed to the Settlement Motion that is based on the current version of the Settlement Agreement.

Zero Recovery For The Unsecured Creditors

At first glance, the terms of the Settlement Agreement appear to treat secured debt and unsecured debt fairly by splitting the sale proceeds 85% to the Bank and 15% to the Estates. But a careful examination of the terms of the Settlement Agreement and the Estates' financial condition shows that it is highly unlikely that the unsecured creditors would receive any distribution under the current terms, given the amount of administrative claims accruing in the case (the largest of which are potential claims under 11 U.S. C. § 503(b)(9).

The Bank's Calculation Of Its Alleged Super Priority Claim

The Settlement Agreement provides for allocation of $2.5 million to the Bank on an alleged super priority claim under 11 U.S.C. § 507(b) without demonstrating how the Bank and the Debtors calculated that claim and without providing any supporting documents.  The Settlement Agreement simply states that this amount will compensate the Bank for the diminution in value of the Bank's collateral.  The settlement of the alleged super-priority claim without supporting documents and an accurate calculation is problematic for several reasons.

First, throughout the pendency of the Debtors' bankruptcy case, the Bank has been collecting monthly adequate protection payments from the Debtors to address any diminution of the Bank's collateral.

Second, the Bank should provide an accurate and detailed calculation along with any supporting documents (or at least some explanation) showing the basis for the alleged super-priority claim and why $2.5 million is a reasonable settlement figure.  A rough calculation by the Committee shows the cash balance of the Debtors as of the proposed sale closing date to remain same as the cash balance as of the petition date; and, the Committee believes that the pendency of this chapter 11 has actually enhanced the value of the Bank's collateral.

Third, the Bank has not demonstrated that it has a perfected security interest in the Debtors' cash, making the assertion of a § 507(b) claim, to the extent based on use of cash, highly suspect. And, to the extent the basis for a § 507(b) claim is an inventory write off by the Debtors, the Debtors' representative, Nathan Bell, explained that the write off was simply an accounting write off and did not actually decrease the Debtor's inventory. Therefore, any write-downs in inventory or other assets of the Debtors that occurred post-petition do not reduce the value of the Bank's collateral; they are simply accounting adjustments to reflect actual value -- in other words, the book value of the Bank's collateral as of the petition date is not the proper comparison to make to the market value of the asset at a sale. The borrowing base certificate calculation as of the petition date as compared to the asset sale price following auction is simply an improper method to calculate a diminution in value claim.

Committee counsel has requested the supporting calculation from the Bank counsel, but as of October 18, 2010, it has not been fully provided. Additionally, the Committee would like to highlight that the bankruptcy case has enhanced, not diminished, the value of the Bank's collateral, because without the bankruptcy case, the Debtors' companies would have cratered into liquidation. At least under the current scenario under the Settlement Agreement, the Bank stands to achieve more than liquidation value.

### Preference Liability And Lapse Of UCC Filing Statement

Additionally, the Bank faces preference liability for payments received in the 90 days prior to filing of Debtors' bankruptcy. As of the filing date of the Debtors' bankruptcy case on July 26, 2010, the Bank received $439,262.51 from the Debtors in the 90 days prior to the petition date. The Bank also does not have a perfected security interest in any of Matterhorn Group Inc.'s assets, including cash and accounts receivables.

### Conclusion

For the foregoing reasons, the Committee respectfully requests that the Court deny the Debtors' Settlement Motion to allow the Debtors, the Bank, and the Committee an opportunity to revise the Settlement Agreement that will reflect a fair treatment of the secured debt as well as the unsecured debt. The Committee further requests that the Court grant such

4

1  other and additional relief as the Court deems just and proper under the circumstances of these

2  cases.

3

4  DATED: October 18, 2010                    DOWNEY BRAND LLP

5

6                                             By:_____

7                                                      JAMIE P. DREHER
                                                        AILEEN J. KIM
8                                             Attorney for Official Committee of Unsecured
                                                            Creditors

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28