FILED

October 20, 2010

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003015300

*In re: Matterhorn Group, Inc.*
Case No. 10-39672 (MSM)
United States Bankruptcy Court —Eastern District of California
(Sacramento Division)

# EXHIBIT 3

## TO DECLARATION OF EMILY P. RICH IN SUPPORT OF UNIONS' JOINT MOTION TO WITHDRAW THE REFERENCE OF DEBTORS' MOTION TO MODIFY OR REJECT COLLECTIVE BARGAINING AGREEMENTS

### WITH

THE BAKERY, CONFECTIONERY, TOBACCO WORKERS AND GRAIN MILLERS' LOCAL NO. 85 AND TEAMSTERS LOCAL 324

1    **32 PAGES**
     CHRISTIAN L. RAISNER, Bar No. 133839
2    EMILY P. RICH, Bar No. 168735
     YURI Y. GOTTESMAN, Bar No. 264924
3    WEINBERG, ROGER & ROSENFELD
     A Professional Corporation
4    1001 Marina Village Parkway, Suite 200
     Alameda, California 94501-1091
5    Telephone 510.337.1001
     Fax 510.337.1023
6
     Attorneys for Creditor
7    The Bakery, Confectionery, Tobacco Workers
     Union Local No. 85 and Teamsters Local 324
8

9                UNITED STATES BANKRUPTCY COURT

10               EASTERN DISTRICT OF CALIFORNIA

11                   (SACRAMENTO DIVISION)

12   In re                          ) Lead Case No.    10-39672 (MSM)

13   MATTERHORN GROUP, INC.,         ) (Jointly Administered with Nos. 10-39664
                                     ) (MSM) and 10-39670 (MSM)
14          Debtor.                  )
                                     ) DC No.  LNB-17
15   _____       )

16   VITAFREZE FROZEN                ) Chapter 11 Case
     CONFECTIONS, INC.,              )
17                                   ) **MEMORANDUM OF POINTS AND
            Debtor.                  ) AUTHORITIES IN SUPPORT OF
18                                   ) THE BAKERY, CONFECTIONERY,
                                     ) TOBACCO WORKERS AND GRAIN
19                                   ) MILLERS' INTERNATIONAL
                                     ) UNION LOCAL NO. 85 AND
20                                   ) TEAMSTERS LOCAL 324's JOINT
                                     ) OPPOSITION TO DEBTORS'
21                                   ) MOTION TO MODIFY OR REJECT
                                     ) COLLECTIVE BARGAINING
22   _____       ) AGREEMENTS**

23   DELUXE ICE CREAM COMPANY,       ) DATE:    October 25, 2010
                                     ) TIME:    9:00 a.m.
24          Debtor.                  ) PLACE:   Department A
                                     )          Courtroom 28,  7th Floor
25                                   )          Robert T. Matsui Courthouse
                                     )          501 "I" Street
26   _____       )          Sacramento, CA  95814
       ☒ Affects All Debtors        ) Judge:      Michael S. McManus
27     ☐ Affects Only Matterhorn Groups, Inc. )
       ☐ Affects Only Vitafreze Frozen )
28     Confections, Inc.            )
       ☐ Affects Only Deluxe Ice Cream Company )

WEINBERG, ROGER &
    ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
      Suite 200
Alameda, CA  94501-1091
    510.337.1001

**TABLE OF CONTENTS**

I.    INTRODUCTION...................................................................................... 1

II.   APPLICABLE LEGAL STANDARD ...................................................... 2

III.  FACTUAL BACKGROUND .................................................................. 5

IV.  ARGUMENT ........................................................................................ 11

A. Neither Debtors' Proposed Modifications Nor Rejection Of The CBAs Is Necessary To Reorganization; After A Sale Of Debtors' Assets, Any Independent Purchaser Will Not Be Bound By The Debtors' CBAs .......................................................................... 11

B. Debtors Have Unilaterally Altered Provisions Of All Three CBAs In Clear Violation Of § 1113(f), This Precludes Rejection Of Any Of The CBAs................................................. 14

C. The Collective Bargaining Agreements Must Be Analyzed Individually To Determine Whether Debtors Have Met Their Requirements Under § 1113 .................................... 16

D. The Court Must Deny The Debtors' Motion To Reject Where, As Here, The Debtors Have Not Met Their Burden Of Proof On Each And Every One Of The Nine § 1113 Requirements................................................................................... 17

    1. Debtors do not meet the § 1113 standard because they failed to provide proposals to the Unions that modified the current CBAs ............................................ 17

    2. Debtors have not shown that their proposals were based on the most complete and reliable information available at the time................................................. 18

    3. The Court must deny the § 1113 Motion because Debtors have not established that the modifications Debtors proposed are necessary for reorganization ................... 18

        a) Debtors' proposed deletion of Section 1 of the Local 85 CBA and a similar provision in the Local 324 Palletizers CBA is just a proposal to completely reject the CBAs; it is not a proposal that is necessary to reorganization.......... 19

        b) Debtors have not shown that the proposed wage reductions, health insurance cuts, and elimination of pension contributions are necessary to reorganization ................................................................................. 20

        c) Debtors have failed to show that maximization of the value of Debtors' business, through rejection of the CBAs, is necessary to reorganization......... 22

        d) Debtors have no justifiable reason for extending the No Strike Clause .......... 22

    4. Debtors did not provide the Unions with the information necessary to evaluate the proposal ....................................................................................... 23

    5. Debtors fail to treat creditors, the Debtors, and all affected parties fairly and equitably ..................................................................................... 25

    6. The Debtors have not met at reasonable times to bargain over each Collective Bargaining Agreement .................................................................... 26

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

7.  The Debtors have not bargained in good faith in an attempt to reach mutually satisfactory modifications .......................................................................................... 28

8.  The Unions have not rejected any proposals—and certainly have not rejected proposals without good cause ............................................................................... 28

9.  The balance of the equities does not favor rejection ................................................ 28

E.  Modification Under § 1113(e) Is Not Simply A Judicially Proscribed Alternative To Rejection As Debtors Seem To Propose—If This Motion Actually Requests Modification, It Must Be Denied .................................................................................. 29

1.  Courts have the power to grant relief under § 1113(e) *only* for the interim period between the scheduling of a hearing pursuant to § 1113(b) and the final relief granted, if any, under that section—the court may not grant the permanent or long-term modifications apparently requested ................................................................. 30

2.  Debtors have not addressed or met the "essential" standard for modification ......... 31

III.  CONCLUSION ............................................................................................................ 32

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

**TABLE OF AUTHORITIES**

FEDERAL CASES

Am. Flint Glass Workers Union v. Anchor Resolution Corp.,
  197 F.3d 76 (3d Cir. 1999) ............................................................................ 3, 15

Fall River Dyeing & Finishing Corp. v. NLRB,
  482 U.S. 27 (1987) ............................................................................................ 12

In Re Ala. Symphony Ass'n.,
  211 B.R. 65 (N.D. Ala. 1996) ................................................................ 14, 15, 16

In re American Provision Co.,
  44 B.R. 907 (Bankr. D.Minn. 1984) .................................................................... 4

In re Armstrong Store Fixtures Corp.,
  135 B.R. 18, 21 (Bankr. W.D. Pa. 1992) .......................................................... 14

In re Certified Air Techs., Inc.,
  300 B.R. 355 (Bankr. C.D. Cal. 2003) ............................................................... 17

In re Continental Airlines,
  125 F.3d 120 (3d Cir.1997) ................................................................................. 3

In re Elec. Contracting Servs. Co.,
  305 B.R. 22 (Bankr. D. Colo. 2003) .................................................................. 25

In re Express Freight Lines, Inc.,
  119 B.R. 1006 (Bankr. E.D.Wis.1990) .............................................................. 28

In re Family Snacks, Inc.,
  257 B.R. 884 (B.A.P. 8th Cir. 2001) ................................................................. 12

In re GCI, Inc.,
  131 B.R. 685 (Bankr. N.D.Ind. 1991) ............................................................... 15

In re Indiana Grocery Co., Inc.,
  136 B.R. 182 (Bankr. S.D. Ind. 1990) ............................................................... 25

In re Ionosphere Clubs, Inc.,
  922 F.2d 984 (2d Cir.1990) ................................................................................. 3

In re Ionosphere Clubs,
  139 B.R. 772 (S.D. N.Y. 1992) .................................................................... 30, 31

In re K & B Mounting, Inc.,
  50 B.R. 460 (Bankr. N.D. Ind. 1985) .......................................................... 23, 24

In re Kentucky Truck Sales, Inc.,
  52 B.R. 797 (Bankr. W.D. Kentucky 1985) ...................................................... 17

In re Mesaba Aviation, Inc.,
  341 B.R. 693 (Bankr. D. Minn. 2006) .......................................................... 24, 25

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

In re Moline Corp.,
144 B.R. 75 (Bankr. N.D. Ill. 1992) ............................................................ 17

In re Pierce Terminal Warehouse, Inc.,
133 B.R. 639 (Bankr. N.D.Iowa 1991) ........................................................ 19

In re Prime, Inc.,
26 B.R. 556 (Bankr.W.D.Mo.1983) ............................................................ 15

In re Roth Am., Inc.,
975 F.2d 949 (3d Cir.1992) ........................................................................ 3

In re Salt Creek Freightways,
46 B.R. 347 (Bankr. D. Wyo. 1985) ...................................................... 31, 32

In re The Lady H Coal Co., Inc.,
193 B.R. 233 (Bankr. S.D. W. Va. 1996) ................................................ 4, 12

In re Valley Kitchens, Inc.,
52 B.R. 493 (Bankr. S.D. Ohio 1985) ......................................................... 19

In re William P. Brogna & Co.,
64 B.R. 390 (Bankr. E.D. Pa. 1986) ........................................................... 20

John Wiley & Sons v. Livingston,
376 U.S. 543 (1964) ................................................................................... 29

Landmark Hotel & Casino. Inc.,
78 B.R. 575 (9th Cir. B.A.P. 1987) ............................................................ 31

NLRB v. Burns Int'l Sec. Servs., Inc.,
406 U.S. 272 (1972) ................................................................................... 11

NLRB v. Horizons Hotel Corp.,
49 F.3d 795 (1st Cir. 1995) ................................................................. 13, 14

Truck Drivers Local 807 v. Carey Transportation, Inc.,
816 F.2d 89 (2d Cir. 1987) ........................................................................ 31

FEDERAL STATUTES

11 U.S.C. § 101 ............................................................................................. 14

11 U.S.C. § 1113 ..................................................................................... 1, 3,16

29 U.S.C. § 151 ................................................................................. 20, 22, 23

OTHER AUTHORITIES

Bankruptcy, 4 Am Bankr Inst L Rev 5, 6 (Spring 1996) ............................... passim

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

# I.    INTRODUCTION

The Debtors' Motion to Modify or Reject Collective Bargaining Agreements ("Debtors' § 1113 MPA") rests upon violations of federal labor law that preclude it from being granted. Debtors' § 1113 MPA purports to recite the grounds required by 11 U.S.C. § 1113 for modification or rejection of a collective bargaining agreement ("CBA"). The Motion's essence, however, is to seek judicial ratification of unfair labor practices, and other violations that have continued from the outset of these bankruptcy cases. The serious violations carry ruinous potential for the Debtors' estates and creditors, in addition to harming the workers and their Unions.[1]

Although far from transparent, the public record reveals enough to pull the plug on CBA rejection. In rough sequence, the Debtors filed bankruptcy petitions July 26, 2010 and proceeded as follows:

- Stopped making pension contributions under the respective multiemployer pension plans as specified in their CBAs and obtained an estimate of $4.4 million as its amount of withdrawal liability for the Bakery pension fund;

- Refused to pay scheduled wage increases under the Deluxe Ice Cream CBAs;

- Failed to bring all Health contributions current, forcing losses of benefits;

- Decided to sell substantially all assets at both Vitafreze and Deluxe Ice Cream;

- Decided to seek rejection of all Union contracts by court order under § 1113.

The Debtors then sent extreme and hostile proposals to the Unions for modifications, including those CBA alterations it had already installed concerning pensions and scheduled pay increases. The proposals came with the threat that a CBA rejection motion would be sought on a coming certain date if agreement was not reached before then. Meanwhile the Unions' information requests went unanswered, and the Unions' requests to meet about the CBA modification proposals were ignored,[2] until after the Debtors' § 1113 MPA was filed. The Debtors also refused to meet

---

[1] Bakery, Confectionery, Tobacco Workers and Grain Millers' International Union Local No. 85 has a CBA covering workers at Vitafreze Frozen Confections, Inc. in Sacramento; General Teamsters Local 324 has two CBAs covering workers at Deluxe Ice Cream Company in Salem, Oregon.

[2] One short meeting respecting the Vitafreze CBA was broken off because Debtors were unprepared to discuss the pension and sale issues and wished to obtain labor counsel.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

1   concerning their unilateral cessation of pensions and refused to bargain about their decision to sell

2   substantially everything and the effects of that decision.[3]

3           The Debtors' bargaining conduct portrays the marks of a sham procedure, designed to

4   secure rejection based on proposals for modifications it has already set in place with no bargaining

5   at all. The Debtors will next argue that CBA rejection damages should be deemed prepetition

6   claims, as would multi-million dollar pension withdrawal liability claims, and that a successor

7   employer should have no responsibility to Unions, pension funds, or workers. When the successor

8   in fact may include current owners or insiders, the bona fides of the CBA rejection fail.[4] Other

9   questions remain, including about details of whether the Debtors in fact seek CBA rejection to

10  benefit insiders who are able to direct the Debtors' actions,[5] poisoning good faith bargaining

11  processes.

12          The law forbids this gambit. When an alteration of a collective bargaining agreement

13  occurs prior to commencing § 1113 proceedings, **the alteration precludes rejection of that**

14  **agreement,** as discussed in detail in this brief. To take away contract provisions and then insist on

15  bargaining from that point is unfair bargaining and unlawful under the NLRA.

16          Apart from the pension and labor law violations underlying the Rejection Motion, the

17  Debtors' failure, even facially, to carry their burden of establishing all required elements of § 1113

18  is also set out in this brief. Before reaching those elements, however, the Rejection Motion should

19  be rejected to protect the law and the collective bargaining process.

20                  **II.      APPLICABLE LEGAL STANDARD**

21          Section 1113 was enacted "in order to buffer CBAs against uncontrolled inroads whenever

22  financial distress drives an employer into the bankruptcy courts in an effort to reorganize. *In re*

23  ──────────────────

24  [3] Unfair bargaining charges have been filed with the NLRB on behalf of each of the Unions to address these and other issues under the National Labor Relations Act.

25  [4] The sale process could be tarnished by Debtors' maneuvers, in that the sale motion seeks a finding that the sale is "Free and Clear of the Debtors' Union and Pension Liabilities," *see*

26  Debtors' MPA ISO Sale at 27, with no consideration of the controlling non-bankruptcy statutes, the NLRA and ERISA.

27  [5] CEO Nathan Bell's acknowledgement of his own interest in a purchase of the Debtors' assets

28  suggests that the Debtors' bargaining conduct could be shaped to favor CBA rejection to the prejudice of the estate, the creditors, the pension plans, and the Unions and their members.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001
                                        - 2 -

1  *Continental Airlines*, 125 F.3d 120, 137 (3d Cir.1997) and *In re Roth Am., Inc.*, 975 F.2d 949, 956

2  (3d Cir.1992), both citing *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989-90 (2d Cir.1990))." *Am.*

3  *Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 81- 82 (3d Cir. 1999).

4  A debtor may "reject a collective bargaining agreement only in accordance with the

5  provisions of [Section 1113]." 11 U.S.C. §1113 (a). Subsection (b)(1) specifies that:

6  [s]ubsequent to filing a petition and prior to filing an application seeking
   rejection of a [CBA], the debtor . . . shall – (A) make a proposal to the
7  authorized representative of the employees covered by such agreement,
   based on the most complete and reliable information available at the time of
8  such proposal, which provides for those necessary modifications in the
   employees benefits and protections that are necessary to permit the
9  reorganization of the debtor and assures that all creditors, the debtor and all
   of the affected parties are treated fairly and equitably; and (B) provide,
10 subject to subsection (d)(3), the representative of the employees with such
   relevant information as is necessary to evaluate the proposal.

11

12 Subsection (b)(2) further states:

13 During the period beginning on the date of the making of a proposal
   provided for in paragraph (1) and ending on the date of the hearing provided
14 for in subsection (d)(1), the [debtor] shall meet, at reasonable times, with the
   authorized representative to confer in good faith in attempting to reach
15 mutually satisfactory modifications of such agreement.

16 Section 1113 subsection (c) further states:

17 The court shall approve an application for rejection of a collective
   bargaining agreement only if the court finds that – (1) the [debtor] has, prior
18 to the hearing, made a proposal that fulfills the requirements of subsection
   (b)(1); (2) the authorized representative of the employees has refused to
19 accept such proposal without good cause; and (3) the balance of the equities
   clearly favors rejection of such agreement.

20

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

The above requirements are cumulative.[6] "Rejection of a collective bargaining agreement is prohibited absent strict compliance with the substantive and procedural requirements of the statute."[7] Accordingly, a debtor cannot prevail unless it meets *all* of the Section 1113 hurdles.

This analysis does not require a Court to make value judgments as to "whether the [debtor's] position is right and the Union's is wrong, or vice versa," nor "whether collective bargaining agreements are good or bad." *In re Bruno's Supermarkets, LLC*, No. 09- 00634-BGC-1, 2009 WL 1148369, *18 (Bankr. N.D. Ala. Apr. 27, 2009).[8] On the other hand, the Unions urge the Court not to lose sight of the fact that:

---

[6] In essence, the movant under Section 1113 must, prove by a preponderance of the evidence, the nine elements that were set out in the leading case, *In re American Provision Co.*, 44 B.R. 907, 909 (Bankr. D.Minn. 1984), which is followed by virtually all courts:

1. The debtor must make a proposal to the union to modify the collective bargaining agreement.

2. The proposal must be based on the most complete and reliable information available at the time of the proposal.

3. The proposed modifications must be necessary to permit the reorganization of the debtor.

4. The proposed modifications must assure that all creditors, the debtor and all affected parties are treated fairly and equitably.

5. The debtor must provide to the union such relevant information as is necessary to evaluate the proposal.

6. Between the time of making of the proposal and the time of the hearing on approval of the rejection of the existing collective bargaining agreement, the debtor must meet at reasonable times with the union.

7. At the meetings the debtor must confer in good faith in attempting to reach mutually satisfactory modifications of the collective bargaining agreement.

8. The union must have refused to accept the proposal without good cause.

9. The balance of the equities must clearly favor rejection of the collective bargaining agreement.

*American Provision*, 44 B.R. at 909.

[7] *In re Certified Air Techs., Inc.*, 300 B.R. 355, 361 (Bankr. C.D. Cal. 2003). The debtor bears the burden of proving *all* of the *American Provision Co.* requirements by a preponderance of the evidence. *In re Kentucky Truck Sales, Inc.*, 52 B.R. 797, 800-801 (Bankr. W.D. Ky. 1985). If the debtor does not meet that burden on any one of the elements, the Court may not allow it to reject its collective bargaining agreements. *In re American Provision Co.*, 44 B.R. 907, 909 (Bankr. D.Minn. 1984); *In re The Lady H Coal Co., Inc.*, 193 B.R. 233, 241 (Bankr. S.D. W. Va. 1996) ("As the Court finds that the Debtors have not met elements (4), (7) and (9) above for the reasons set forth below, it is not necessary to address any of the other elements.").

[8] Although Debtors' intent is obscure, to the extent Debtors contend that they are merely seeking "authority to reject" and not actual rejection, such a contingent motion is not provided for in the statute. Section 1113(f) provides for a motion to reject, alone; no "authority to reject" or "contingent rejection" is available.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

> Compared to the typical claim in bankruptcy . . . wages represent a large part of an employee's wealth. In addition, unlike the ordinary trade creditor, the typical employee does not have other sources of income, and thus cannot effectively diversify the risk of the employer's default. A short period of unpaid wages, therefore, may bring immediate and severe harm to an employee and her family.
>
> Furthermore, unlike sophisticated commercial creditors, most employees do not meaningfully "assume the risk" of their debtor's default. Most employees accept employment on the basis of severely limited information and have little ability to protect themselves in advance of an employer's possible default. Generally, employees are unable to assess the present or future creditworthiness of their employer, and it is often difficult for them to monitor their employer's financial condition during the course of their employment. Even if they happen to learn of an employer's financial troubles in time to act, workers may lack the mobility to change jobs. Indeed, businesses reap important benefits from the fact that many workers suffer constraints in information and mobility. If employees had full information and total mobility, they might be inclined to abandon such businesses at the earliest signs of financial distress, or based on rumor rather than fact.

Donald R. Korobkin, *Employee Interests in Bankruptcy*, 4 Am Bankr Inst L Rev 5, 6 (Spring 1996).

## I.   FACTUAL BACKGROUND

The Bakery & Confectionery Workers Local 85 and the Debtors are parties to a Collective Bargaining Agreement ("Local 85 CBA") with a term of August 30, 2009 through August 31, 2013. *See* Exhibit 1 to Debtors' § 1113 MPA.

The Teamsters Local 324 has two collective bargaining agreements with the Debtors for work at the Salem, Oregon plant, one of which covers the Packagers and Palletizers ("Local 324 Palletizers CBA"), and the other of which covers the operators, loaders, semi-drivers, and maintenance workers ("Local 324 Operators CBA"). Both the Local 324 Palletizers CBA and the Local 324 Operators CBA have terms of August 1, 2008 through July 31, 20100. *See* Exhibit 3 to Debtors' § 1113 MPA at 85; Exhibit 2 to Debtors' § 1113 MPA at 58.

Debtors have instituted at least two unilateral changes to the CBAs—changes which are subject to mandatory bargaining under federal law. Debtors unilaterally ceased all pension contributions to the Trust Funds of both Unions, covering all of the workers under the three Collective Bargaining Agreements. *See* Partial Transcript of 9/2/2010 Creditors' Meeting at 10,

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

attached as Exhibit A to Gottesman Decl. Debtors also failed to institute the August 1, 2010 wage increases as required by the Local 324 Operators CBA and the Local 324 Palletizers CBA. Exhibit A to Gottesman Decl. at 10; Exhibit 2 to Debtors' § 1113 MPA at 43; Exhibit 3 to Debtors' § 1113 MPA at 72.

MGI sent a proposal to the Bakery Workers Local 85 on August 29, 2010, however, that proposal, attached to Debtors' § 1113 MPA as Exhibit 4 (without a cover page),[9] does not propose modifications to the *current* CBA, (which is attached to Debtors § 1113 MPA as Exhibit 1). Nonetheless, Local 85 sent a cover letter and request for information relating to the original proposal on September 27, 2010. Exhibit B to Gottesman Decl.

The Debtors sent proposals to the Teamsters Local 324 on September 22, 2010. Teamsters Local 324 responded on September 27 with a cover letter and an information request for information needed to evaluate the necessity of the proposals. Exhibit C to Gottesman Decl. On October 14, 2010, Debtors responded to this information request. For the Local 324 Operators CBA information request, Debtors answered some of the questions in a vague and ambiguous manner (for example, answering questions that specifically asked for financial impact without providing financial figures) and failed to answer other questions. Exhibit D to Gottesman Decl. For the Palletizers CBA information request, Debtors only responded to one question out of nineteen. (Q: Why is this change [removal] to the union security article necessary? A: To allow for all potential employees to make their own decision as to whether they want to make contributions to the union and become union members.") *Id.*

Both the Bakery Local 85 and the Teamsters Local 324 requested detailed information about the potential purchasers of the Debtors' assets. Exhibit E to Gottesman Decl. The Debtors did respond to the request, but did not provide any information related to potential purchasers. Exhibit I to Gottesman Decl.

---

[9] It is plausible that the reason the cover page is missing is because Debtors realized they had not made proposals to the correct CBA, and are trying to hide this fact from the Court. On October 14, 2010, after Debtors' § 1113 MPA was filed, Debtors sent the Bakery Workers Local 85 a proposal that did make modifications to the current CBA, however these modifications were different from their original proposal.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

Contrary to its declarations submitted to this Court, the Debtors have not responded to the information requests related to the Local 85 CBA.

On September 20, the Debtors met with representatives of Local 85, but Debtors adjourned stating that they were not prepared to address certain issues, including the effect of withdrawal liability and the effect of successor obligations in the event of sale. *See* Exhibit F to Gottesman Decl. [letter of David Rosenfeld to Nathan Bell]. On Friday October 15, Debtors confirmed by special labor counsel Ron Klepetar that it would meet on October 19 with Local 324 representatives and on October 21 with Local 85 representatives.

As a response to Debtors' ceasing to make pension contributions and failure to implement contractual wage increases, the Unions filed two Unfair Labor Practice Charges with the National Labor Relations Board. Exhibit G to Gottesman Decl.

The three proposals sent to the Unions included the following proposed modifications of the Agreements, among others:

1. **Non-economic issues**

    a)     **Bakers Local 85 CBA**

        (1)     Deletion of Section 1, which provides that, in part, "[t]he employer recognizes the Union as the sole bargaining agent for all such employees, excluding but not limited to all office, clerical, sales personnel, managers, guards, and supervisors as defined under the National Labor Relations Act." Exhibit 4 to Debtors' § 1113 MPA at 90. The Debtors replaced this section with the phrase "[b]ased on the employees [sic] desire to have the Union represent them," (unconnected to any sentence), in section 2 B and repeated it again in section 2 E. *Id.*

        (2)     A change in wage structure to "performance based" from seniority based. Exhibit 4 to Debtors' § 1113 MPA at 95.

        (3)     Elimination of seniority rights. This included the ability of employees to acquire extra shifts based on whether they were

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

1                         qualified and were the most senior employee. Exhibit 4 to Debtors'

2                         § 1113 MPA at 92.

3          (4)        President's Day eliminated as a holiday. Exhibit 4 to Debtors'

4                         § 1113 MPA at 92.

5     **b)**      **Teamsters Local 324 Palletizers CBA**

6          (1)        Removal of Article 1.3 language stating that employees shall join the

7                         Union "as a condition of employment," instead leaving union

8                         membership up to each new worker. Exhibit 5 to Debtors' § 1113

9                         MPA at 123.

10         (2)        Deletion of a provision which provides that a "probationary

11                        employee shall never be transferred, promoted, retained during work

12                        force reductions, or returned to work after layoff in preference over a

13                        non-probationary employee." Exhibit 5 to Debtors' § 1113 MPA at

14                        131.

15         (3)        Change in wage structure from seniority based to "performance

16                        based." Exhibit 5 to Debtors' § 1113 MPA at 127.

17         (4)        Elimination of Article 7.7: Distribution of Overtime and Available

18                        Weekend Work for the Plant, which eliminates the distribution of

19                        overtime shifts to the most "senior qualified employee." Exhibit 5 to

20                        Debtors' § 1113 MPA at 128.

21     **c)**      **Teamsters Local 324 Operators CBA**

22         (1)        Change in wage structure from seniority based to "performance

23                        based." Exhibit 5 to Debtors' § 1113 MPA at 149.

24         (2)        Elimination of Article 7.8: Distribution of Overtime and Available

25                        Weekend Work for the Plant, which eliminates the distribution of

26                        overtime shifts to the most "senior qualified employee." Exhibit 5 to

27                        Debtors' § 1113 MPA at 151.

28   ///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

2.      **Elimination of pension and other benefit cuts**

After Debtors already had ceased all pension contributions, Debtors then proposed elimination of pension contributions in all three CBAs. *Compare* Exhibit 1 to Debtors' § 1113 MPA at 22-23 with Exhibit 4 to Debtors § 1113 MPA at 98-100; Exhibit 5 to Debtors § 1113 MPA at 133; Exhibit 5 to Debtors § 1113 MPA at 156.

Debtors proposed to reduce union health insurance contributions by 71% for Bakery Workers Local 85 members, by 70% for Teamsters Local 324 members, and eliminate health insurance completely for seasonal workers. Debtors' § 1113 MPA 8:12-15, 15: 7-17. Debtors propose to eliminate dental insurance for all three unions. *Id.* at 15:19-25.

3.     **Wages**

Debtors proposed hourly wage cuts of up to 54.8% for their union employees. Below are the proposed reductions in wage per job title:

     a)      **Bakers Local 85 CBA percentage reduction in hourly pay (compared to wages under the current CBA):**

         (1)     Foreperson: **19.8%**

         (2)     Utility Worker: **35.3%**

         (3)     Juice Mixer, Operator, Sanitors: **34.4%**

         (4)     Hardening: **27.2%**

         (5)     Packer and Head Packer (condensed into one): **46.6%**

         (6)     Maintenance Mechanic: **36.9%**

*Compare* Exhibit 1 to Debtors § 1113 MPA at 14 *with* Exhibit 1 to Debtors § 1113 MPA.

     b)      **Teamsters Local 324 Palletizers CBA percentage reduction in hourly pay (compared to wages under the current CBA):**

         (1)     Packaging: **11.8%** (reduced to California minimum wage)

         (2)     Palletizers: **11.8%** (reduced to California minimum wage)

*Compare* Exhibit 3 to Debtors § 1113 MPA at 72 *with* Exhibit 5 to Debtors § 1113 MPA at 127.

///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

     **c)**     **Teamsters Local 324 Operators CBA percentage reduction in hourly pay, as of October 1, 2010[10]**

     (1)     Maintenance: **22.3%**

     (2)     Operator: **46.4%**

     (3)     Driver: **43.2%**

     (4)     Packer: **54.8%** (reduced to California minimum wage)

*Compare* Exhibit 2 to Debtors § 1113 MPA at 43 *with* Exhibit 5 to Debtors § 1113 MPA at 150.

Absent from these proposals was any modification to the "no-strike" provisions of all three contracts. Other than in their § 1113 Motion, the Debtors have not presented either Union with the desire to extend the no-strike provision of the CBAs. In an October 4, 2010 hearing in this case, this Court stated that:

> The evidence [the Debtors are] relying on for rejection needs to be in the motion. And if there's been further negotiations since the filing of the motion, then something is relevant, that's fine. I understand. But, Mr. Raisner wants to make sure when he gets the motion he knows why you think the contracts ought to be rejected or they ought to have the right to be rejected. And you satisfied the conditions to the filing of that motion.

Exhibit H to Gottesman Decl.

The Unions have been and are willing to meet and negotiate with the Debtors, and are willing to make serious economic concessions with respect to their CBAs.

The Debtors have not provided a plan for reorganization, but have stated that they are in a "dire" financial position. However, in a Creditors' meeting held on September, 2, 2010, Nathan Bell, under oath, stated that the Debtors had a $3 million dollar positive EBIDTA for 2009. Exhibit A to Gottesman Decl., 2. As late as June 2010, the Debtors had a $400,000 positive EBIDTA. *Id.* Mr. Bell further stated that the Debtors have "a very solid business with a product that's geographically viable," that Mr. Bell has "not seen a single indication of drop in volume

---

[10] The Debtors changed the job titles for this contract, so it was not possible to determine what current job titles would transition to the proposed "foreperson," "utility," and "hardening" positions.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

from [their] customers," and that the Debtors' customers have "remained loyal and stuck with [them]." *Id.* at 10-11.

Debtors estimate that they have lost $3 million dollars over the last 18-24 months on selling Crystal Light products, with "the greater portion of that [] in the last 12 months." *Id.* at 3. According to Mr. Bell, "things have been done to discontinue" the Crystal Light products, thus saving at least $1.5 million in losses per year. *Id.* at 5. The Debtors have also estimated that they have lost at least $1.25 million/year on a variety pack product for Costco, which they also plan on discontinuing. *Id.* at 6-7.

Debtors' CEO Nathan Bell has stated in negotiations with the Bakers Local 85 and in a Declaration that he and a team of investors are trying to purchase the Debtors' assets. Decl. of Bell at ¶ 20 In Support Of Sale Motion, Filed Oct. 8, 200 [DOC # 269], attached as Exhibit J to Gottesman Decl. ("I have previously made clear to both the Bank and the Creditors' Committee that I, working alone or in conjunction with others, may be a bidder at the auction sale.").

## III.    ARGUMENT

**A.    NEITHER DEBTORS' PROPOSED MODIFICATIONS NOR REJECTION OF THE CBAS IS NECESSARY TO REORGANIZATION; AFTER A SALE OF DEBTORS' ASSETS, ANY INDEPENDENT PURCHASER WILL NOT BE BOUND BY THE DEBTORS' CBAS**

The gravamen of Debtors' argument is that "it would be burdensome for any prospective purchaser to buy the Debtors' assets including the over-market obligations required by the Collective Bargaining Agreement." Debtors' § 1113 MPA at 9:11-14. Because the Debtors will auction their assets on November 1, 2010, Debtors argue that the Court should grant their § 1113 motion because any prospective purchaser would find the obligations under the CBAs "burdensome"—and this burden will reduce the potential sale price. The Debtors are misleading this Court.

Under federal labor law, an employer **cannot be bound to the substantive terms of the CBA between the predecessor employer and the union** unless the successor has agreed to or assumed the substantive terms of the CBA. *NLRB v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272 (1972). Here, there has been no indication that a prospective purchaser would agree to assume the

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

1 CBAs (at all or in any modified form), nor any indication that the Debtors have requested a

2 prospective purchaser to do so. Thus, the Court's ruling on the Debtor's § 1113 MPA in this

3 matter is of no legal consequence to the issue of whether any prospective purchaser is at risk of

4 having the CBAs imposed on it. There is no "burden" holding down the price of the assets.

5 Therefore, this Court's modification or rejection of the CBAs cannot logically be deemed

6 "necessary" for the sale of Debtors' assets.

7 In *Burns*, the union filed an unfair labor practice charge against a successor employer,

8 seeking, *inter alia*, an order requiring it to honor the CBA between the union and the predecessor

9 employer. The Supreme Court held that a successor employer would not be bound to the

10 substantive terms of the CBA between the predecessor employer and the union unless the

11 successor had agreed to or assumed the substantive terms of the CBA because it would violate a

12 provision of the National Labor Relations Act if the NLRB were to enforce the substantive terms

13 of a collective bargaining agreement against a party who had not agreed to its terms, and also

14 because such a rule would "inhibit the free flow of capital." Later, in *Fall River Dyeing &*

15 *Finishing Corp. v. NLRB*, 482 U.S. 27 (1987), the Supreme Court upheld the NLRB's application

16 of the *Burns* successorship doctrine to an employer who had purchased the assets of a bankrupt and

17 liquidated predecessor.

18 Because there is no risk to the purchaser of succeeding to the buyer's position vis-à-vis a

19 CBA, nor to the seller's liability for post-sale conduct vis-à-vis the CBA, bankruptcy courts have

20 approved asset sales to purchasers without having first approved a § 1113 rejection of a CBA. *See,*

21 *e.g., In re Family Snacks, Inc.*, 257 B.R. 884, 898 (B.A.P. 8th Cir. 2001) (the buyer of the debtor's

22 assets explicitly refused to assume any liabilities under an existing collective bargaining agreement

23 between the debtor and the employees' union; the court held that the debtor "was not required to

24 reject the CBA prior to or in conjunction with the asset sale under § 1113").[11]

25

---

26 [11] In *In re The Lady H Coal Co., Inc.*, *supra*, 193 B.R. at 243, the court elaborated upon the same
rule: "Even though the Court found it not proper to permit rejection of the CBA, it does not follow

27 that the Court is required or permitted to deny the Debtors' motion to sell....The Court believes
that sales under § 363(b) provide protection to objecting parties as such objections or claims may

28 attach to the proceeds of such sale. Employee creditors are protected by the right to file claims for
breach of the [CBA] with such damages to be satisfied by payments from the proceeds of sale."

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

///

Finally, regardless of whether the bankruptcy court authorizes a sale "free and clear" of any CBA's provisions, the NLRB still will retain exclusive jurisdiction to determine the buyer's obligations to recognize and bargain with the unions representing the bankrupt company's employees. *See*, *NLRB v. Horizons Hotel Corp.*, 49 F.3d 795, 802 (1st Cir. 1995) (holding that the NLRB and not the bankruptcy court has jurisdiction to decide whether an entity that purchased assets out of bankruptcy must bargain with the predecessor's union).

The Debtors have recently hired labor counsel, who should be aware of the applicable federal labor law here. Given that a sale of assets is forthcoming and the lack of impact the CBAs should have on the purchase price, it is unclear why Debtors wish to modify or reject the CBAs.[12] Debtors' CEO Nathan Bell has stated both in a meeting with the Bakery Local 85 and in a Declaration that he and a team of investors are trying to purchase the Debtors' assets. Ex. I to Gottesman Decl at ¶ 20. This may provide a clue as to why this motion was made. If a purchaser is found to be an *alter ego* of the former employer, for example, the purchaser may be determined to be bound by the former owner's CBA. It is possible that Mr. Bell is anticipating that his investment group may be sufficiently affiliated with the Debtors to meet the *alter ego* standard and ultimately be bound to the CBAs. If this is the case, he should be candid with the Court and the Unions about this possibility and not make generally incorrect statements about the CBAs' "burden" for "any prospective purchaser."

Here, the Debtors' perceived need is an *element of proof* on which it bears the burden by a preponderance of evidence. The Debtors' alleged "necessity" is that a prospective purchaser may find the Debtors' assets more attractive if the CBAs are rejected. The problem with the Debtors' logic is that it is not necessary to reject the CBAs; a *bona fide* successor will not be bound by them. It is beyond cavil that the Debtors cannot meet their burden to prove "necessity." Therefore, the

---

[12] The Debtors argue, despite the November 1 sale date fixed by the Court, that rejection is "critical to permitting Debtors' reorganization, whether there is a sale of Debtors' assets, and particularly if there is not a sale." Debtors' § 1113 MPA at 3:7-8. Yet Debtors argue that the only alternative to a sale is liquidation. Debtors have yet to explain why modification or rejection is crucial to liquidation.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

1    Court must deny this § 1113 Motion.

2    **B.    DEBTORS HAVE UNILATERALLY ALTERED PROVISIONS OF ALL THREE
          CBAS IN CLEAR VIOLATION OF § 1113(f), THIS PRECLUDES REJECTION OF
3         ANY OF THE CBAS**

4           Prior to initiating any § 1113 proceedings, Debtors unilaterally altered provisions of all

5    three CBAs, which, as a matter of law, precludes rejection of any agreement. The Debtors altered

6    Article 17 of the Local 85 CBA, Article 15 of the Local 324 Palletizers CBA, and Article 15 of the

7    Teamsters Operators CBA, in their entirety, by ceasing to make pension contributions to the

8    respective Pension Funds. *See* Exhibit A to Gottesman Decl. at 10. Further, the Debtors failed to

9    institute the contractually obligated wage increases of Article 6 of the 324 Palletizers CBA, and

10   Article 6 of the Teamsters Operators CBA. *Id.* Because these unilateral alterations of sections of

11   the CBAs violate § 1113 (f) and occurred prior to commencement of § 1113 proceedings, the

12   Debtors are precluded from obtaining rejection of the three CBAs.

13          Section 1113(f) provides that "[n]o provision of this title [11 U.S.C. §§ 101 et seq.] shall be

14   construed to permit a trustee to unilaterally terminate or alter any provisions of a collective

15   bargaining agreement prior to compliance with the provisions of this section."[13] A breach of a

16   collective bargaining agreement constitutes an alteration of that agreement. *See In re Armstrong*

17   *Store Fixtures Corp.*, 135 B.R. 18, 21 (Bankr. W.D. Pa. 1992) (Despite debtors' claims that their

18   failure to pay the contractual wages and benefits under the CBAs was a "mere breach" rather than

19   an "alteration," "[d]ebtors effected a unilateral alteration of the agreements, for purposes of

20   § 1113(f), when they failed to abide by the provisions pertaining to payment of wages and

21   benefits"); *Birmingham Musicians' Protective Ass'n, Local 256-733 v. Ala. Symphony Ass'n (in Re*

22   *Ala. Symphony Ass'n)*, 211 B.R. 65, 69 (N.D. Ala. 1996) ("this court finds persuasive the line of

23   cases holding that a breach [] of the CBA is a violation of § 1113(f).").

24          When an alteration of a collective bargaining agreement occurs prior to commencing

25   _____

     [13] Section 1113(f) applies to debtors in possession as well as to trustees. *See In re Moline Corp.*,
26   144 B.R. 75, 79 n.1 (Bankr. N.D. Ill. 1992) ("Section 1113(f) could be read literally to only bar a
     Chapter 11 trustee from unilaterally altering or terminating the provisions of a collective
27   bargaining agreement. Such a reading in theory would allow a debtor in possession to unilaterally
     alter or terminate a collective bargaining agreement any way it saw fit . . . Such a result is
28   ridiculous..."); *Birmingham Musicians' Protective Ass'n, Local 256-733 v. Alabama Symphony
     Ass'n ("Birmingham Musicians")*, 211 B.R. 65, 70 n.7 (N.D. Ala. 1996).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

§ 1113 proceedings, this **alteration precludes rejection of that agreement**. *Birmingham Musicians*, 211 B.R. at 69 ("allowing a rejection of the CBA is improper when the debtor has unilaterally ceased performing its obligations under the CBA prior to seeking court permission to modify or reject the CBA.").

*In re GCI, Inc.* involved a debtor who impermissibly "jumped the gun" by implementing its proposal for relief from contractual layoff before concluding negotiations. Rejecting the debtor's "advice of counsel" excuse, the court denied the Section 1113 motion, adjudging the debtor to have failed to "confer in good faith," which the court defined as "conduct indicating an honest purpose to arrive at an agreement as the result of the bargaining process." *In re GCI, Inc.*, 131 B.R. 685, 695 (Bankr. N.D.Ind. 1991). The court went on to explain:

> When a debtor seeks protection from creditors, it is constrained to observe the letter and the spirit of such orders granting it protection and allowing it to operate until it seeks and obtains modification of such orders. *In re Prime, Inc.*, 26 B.R. 556, 560 (Bankr.W.D.Mo.1983). The debtor failed to do so. Instead, it apparently elected to implement changes to the contract which were the subject of its proposal in the midst of the negotiating process. In doing so, it violated the explicit commandment of § 1113(f). When a debtor fails to abide by the restrictions which condition and limit its access to bankruptcy relief, it is hardly in a position to make a good faith plea for the court to exercise those powers in its favor. The court cannot find that debtor negotiated with the union in good faith.

*Id.; see also Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 81- 82 (3d Cir. 1999) ("[W]e hold that when as here a debtor in possession . . . binds itself contractually to obtain a change in the legal relations created by a CBA as a condition precedent to closing a sale of substantially all of the debtor's assets, that constitutes an attempt to effect an alteration of the CBA. . . . [H]ere Anchor and Purchaser have sought to misuse the Code in an effort to avoid the collective bargaining process that Congress deemed essential to the balance between labor and reorganizing debtors that it struck in Section 1113.")

In *Birmingham Musicians*, the District Court reversed the Bankruptcy Court's decision granting a rejection of the Debtor's collective bargaining agreement with the Union. There, prior to initiating § 1113 proceedings, the Debtor first unilaterally cut the wages of the union members, and *then* petitioned the Court for rejection. *Birmingham Musicians*, 211 B.R. at 69. In reversing the Bankruptcy Court's decision granting the debtor's motion to reject, the Court found that, as a

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 15 -

matter of law, it could not grant a rejection motion, when, independent of the § 1113 proceedings, the debtor unilaterally altered the agreement, violating § 1113(f). *Id.*

Here, the situation is identical to that in *Birmingham Musicians*. Prior to putting forth any proposals to the Unions or even notifying the Unions that they wished to alter the CBAs, the Debtors unilaterally implemented modifications: the Debtors ceased all pension contributions for all workers covered under the three CBAs, and failed to institute contractual wage increases as provided for in the Teamsters Local 324 CBAs.[14]

This Court should not reward the Debtors for modifying the agreements *first*, and then asking the Court for modification or rejection *later*. "If a debtor is free to breach the CBA without impairing its ability to reject the contract later, then § 1113 provides no incentive to abide by the terms of the CBA in the interim." *Birmingham Musicians*, 211 B.R. at 70. This Court must reject the Debtors' motion to reject all of the agreements.

## C. THE COLLECTIVE BARGAINING AGREEMENTS MUST BE ANALYZED INDIVIDUALLY TO DETERMINE WHETHER DEBTORS HAVE MET THEIR REQUIREMENTS UNDER § 1113

Debtors request that this Court reject all three CBAs with one motion despite § 1113's requirements that Debtors prove each element of § 1113 *for each agreement*. *See* 11 U.S.C. §1113 (a), (b), (c) (all referring to "a collective bargaining agreement" in the singular).[15] Debtors' attempt to reject all three CBAs with one motion is improper, because the Debtors have not even attempted to meet all of § 1113's requirements for each agreement.

In order to determine (1) whether the terms of *the* proposal are "necessary to permit the reorganization of the debtor;" (2) whether the proposed modifications "assure that all creditors, the debtor and all affected parties are treated fairly and equitably;" (3) whether the debtor provided "such relevant information as is necessary to evaluate the proposal;" (4) whether the debtors

---

[14] *See* Exhibit A to Gottesman Decl. at 10 ("Bell: We have opted to not institute a pay increase in Salem as per the collective bargaining agreement. I think it's $25.47 per hour or so; but was to kick in August 1. We have not instituted that . . . we have stopped pension contributions as referred to Unions' contract, that was a $14,400 weekly number and we're not making those contributions as we speak.")

[15] To the extent that Debtors ask the Court to "modify" the bargaining agreements, this too is precluded, as the Debtors have neither requested interim modification under § 1113(e) nor have they followed the requirements under subsection (e) to obtain such modification. See below.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 16 -

1    conferred "in good faith in attempting to reach mutually satisfactory modifications;" (5) whether

2    the unions "have refused to accept the proposal without good cause;" and (6) whether the balance

3    of the equities" favors rejection, *American Provision*, 44 B.R. at 909, the Court must analyze the

4    *individual* proposals and actions associated therewith. Here the Debtors lump all three proposals

5    together, lump their justifications for the necessity of the modifications, and lump their arguments

6    for meeting each element of § 1113, making it impossible for the Unions and this Court to

7    determine which arguments relate to each separate proposal. The aggregation of their arguments,

8    and of their assertions regarding the financial effects of the CBAs' provisions, is seriously

9    prejudicial to the Unions' ability to respond.

10           "Rejection of a collective bargaining agreement is prohibited absent strict compliance with

11   the substantive and procedural requirements of the statute." *In re Certified Air Techs., Inc.*, 300

12   B.R. 355, 361 (Bankr. C.D. Cal. 2003). Where the Debtors have ignored the defects of its motion,

13   the Court lacks power to cure them.

14                   Section 1113 was enacted to override *Bildisco* and set more rigorous
                     standards in chapter 11 cases for the rejection of collective bargaining
15                   agreements than for other executory contracts or leases.

16   *In re Certified Air Techs., Inc.*, 300 B.R. at 366, citing *In re Moline Corp.*, 144 B.R. 75, 78 (Bankr.

17   N.D. Ill. 1992). For this reason alone, the Court should deny Debtors' motion.

18   **D.    THE COURT MUST DENY THE DEBTORS' MOTION TO REJECT WHERE, AS
            HERE, THE DEBTORS HAVE NOT MET THEIR BURDEN OF PROOF ON EACH**
19          **AND EVERY ONE OF THE NINE § 1113 REQUIREMENTS**

20           As explained above, the Debtors cannot prevail here unless they meet *all* of the Section

21   1113 hurdles. *In re Kentucky Truck Sales, Inc.*, 52 B.R. 797, 800-801 (Bankr. W.D. Kentucky

22   1985). In other words, if the Court finds that the Debtor has not proven *one* of the elements by a

23   preponderance of the evidence, the motion must be dismissed. *In re The Lady H Coal Co., Inc.*,

24   *supra*, 193 B.R. at 241; *In re American Provision Co.*, 44 B.R. at 909.

25           **1.    Debtors do not meet the § 1113 standard because they failed to provide
                    proposals to the Unions that modified the current CBAs**
26

27           In order to meet the requirements of § 1113, Debtors "must make a proposal to the union to

28   modify the collective bargaining agreement." *In re American Provision Co.*, 44 B.R. at 909. Here

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 17 -

1 the Debtors did not send a proposal to the Bakery Workers Local 85 modifying the current

2 collective bargaining agreement before filing its § 1113 motion. Debtors sent a proposal to

3 Local 85 on August 29, 2010, however, that proposal, attached to Debtors' § 1113 MPA as Exhibit

4 4 (without a cover page), does not propose modifications to the *current* CBA, (attached to Debtors'

5 § 1113 MPA as Exhibit 1).

6      Further, Debtors' proposals omitted one of Debtors' main proposed modifications, the

7 extension of the No Strike provisions of all three CBAs until 2020. Thus, Debtors have not met

8 their requirement under § 1113 to make proposals which modifies the CBAs.

9      **2.**      **Debtors have not shown that their proposals were based on the most complete**
              **and reliable information available at the time**

10

11      Debtors have not made an adequate showing that they based their proposals on complete

12 and current information. Despite their claim of "transparency," the information they claim to have

13 provided is simply the pleadings and a budget *that they did not provide to the Unions*. Debtors'

14 § 1113 MPA at 20:18-19 (budget was delivered to the Bank and the Creditors' Committee).

15 *Information*, for purposes of this requirement, is not simply statements about "the dire nature of the

16 Debtors' financial condition." *Id.* at 24-25. The Unions have never received, and the Debtors have

17 not presented to this Court, the "historical reality of operational economics . . . and a thorough

18 analysis of all of the incidents of income and expense that would bear on its ability to maintain a

19 going concern in the future." *See, In re Karykeion*, 2010 WL 3297029* 12 (Bankr. C.D.Cal.

20 2010). While the Unions have been informed that the Debtors' lender is refusing to continue their

21 use of any cash collateral beyond mid-November 2010, this does not necessarily bear on the

22 necessity of rejecting the CBAs—it is the Debtors' burden to connect these dots—and they have

23 not.

24      **3.**      **The Court must deny the § 1113 Motion because Debtors have not established**
              **that the modifications Debtors proposed are necessary for reorganization**

25

26      The plain language of § 1113(b)(1)(A) requires that the Debtors propose modifications that

27 are "necessary to permit the reorganization of the debtor."

28                For a proposal to satisfy § 1113(b)(1)(A), it must propose modifications to
               the existing labor contract without which the debtor cannot obtain

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 18 -

confirmation . . . The court must also consider whether the employer, although needing some modifications to successfully reorganize, has sought changes to the contract which materially exceed such needs. The result of such overreaching is that rejection will be prohibited.

*In re Pierce Terminal Warehouse, Inc.*, 133 B.R. 639, 646-47 (Bankr. N.D.Iowa 1991).

Here, the Debtors have not even attempted to justify most of the modifications to the three CBAs, and thus, as a matter of law, the Court must deny their motion.

> **a)** **Debtors' proposed deletion of Section 1 of the Local 85 CBA and a similar provision in the Local 324 Palletizers CBA is just a proposal to completely reject the CBAs; it is not a proposal that is necessary to reorganization**

Debtors' proposed modifications of the Local 85 CBA include the deletion of Section 1 of the Local 85 CBA, which provides that, in part, "[t]he employer recognizes the Union as the sole bargaining agent for all such employees, excluding but not limited to all office, clerical, sales personnel, managers, guards, and supervisors as defined under the National Labor Relations Act." Exhibit 4 to Debtors' § 1113 MPA at 90. The Debtors replaced this section with the phrase "[b]ased on the employees [sic] desire to have the Union represent them," (unconnected to any sentence), in section 2 B and also in section 2 E. *Id.*

Although Debtors' intent is somewhat obscure, apparently Debtors are proposing no less than the complete rejection of any collective bargaining at Vitafreze altogether. Under this modification, Vitafreze would not recognize the Union, and therefore would have no obligation to bargain with the Union. This is not an *economic* proposal that could be argued as necessary to reorganization. It is a rejection of the CBA and the Union's position as the employees' bargaining representative. This is not a legitimate proposal to negotiate from for purposes of § 1113. Non-economic issues in a proposal will require denial of a motion to reject a CBA. A useful application of this principle appears in *In re Valley Kitchens, Inc.*, 52 B.R. 493, 495-496 (Bankr. S.D. Ohio 1985), where the court observed on a motion to reject CBA:

> There were nine subjects dealt with in the proposal given by debtor to the Union, but of these only four had savings for the debtor directly attributed to them, that is, subjects dealt with in the proposal to which no saving was assigned were overtime, shutdowns, job classification, promotion and transfer, and absenteeism and tardiness.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

1  Based on this record we have concluded that the requirements of (b)(1) have
   not been met. Consequently we cannot authorize rejection of the collective
2  bargaining agreement. We go no further in applying the tests of § 1113.

3  A rejection motion likewise was denied because of non-economic issues in the proposal for

4  modification in *In re William P. Brogna & Co.*, 64 B.R. 390, 392 (Bankr. E.D. Pa. 1986). The

5  court reviewed the § 1113 proposal under the necessity prong of § 1113(b)(1):

6  The debtor's proposal contains numerous provisions which are non-
   economic in nature and which we find and conclude are not necessary to
7  prevent the liquidation of the debtor. In comparing Debtor's Ex. "H" with
   Ex. 690-1, we note that many of the debtor's proposed changes have no
8  direct impact on its labor costs and would have no direct bearing on its
   ability to prevent liquidation. For instance, the debtor proposes changes in
9  the grievance procedure, union security and apprentice ratios.

10                    *    *    *

11 Therefore, we hold that the debtor has not satisfied the first-prong of the
   two-pronged statutory test and, on that basis alone, the debtor's Applications
12 to reject these labor contracts must be denied.

13 *Brogna, supra.*

14 Similarly, Debtors proposed removal of Article 1.3 language in the Local 324 Palletizers

15 CBA stating that employees shall join the Union "as a condition of employment," instead leaving

16 union membership up to each new worker. Exhibit 5 to Debtors' § 1113 MPA at 123. The

17 Debtors have provided no justification whatsoever as to why these non-economic modifications are

18 necessary for reorganization, and thus the Court must reject the § 1113 motion.

19           **b)    Debtors have not shown that the proposed wage reductions, health
                     insurance cuts, and elimination of pension contributions are necessary
20                   to reorganization**

21 The Debtors' main argument substantiating the severe reduction of wages is that the union

22 wages "substantially exceed the median wages paid to similarly situated workers in the same

23 geographic area." Debtors' § 1113 MPA at 11:20-21. Arguing that union wages are "above

24 market" and thus need to be reduced pursuant to § 1113, does not address the statutory standard.

25 Unions are in the "business" of organizing workers to equalize bargaining power between

26 employees and employers. *See*, 29 U.S.C. § 151. Union wages, by definition, are not determined

27 by the market alone; they are determined by workers, through their unions, bargaining with and

28 exerting pressure on their employers.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 20 -

1    While the above may appear obvious, the Debtors here have not argued that the relevant

2   union wages are unsustainable for reorganization.  Debtors argue that they wish to save money by

3   paying their employees less because their workers are currently earning more than "market rate."[16]

4   This is not the standard.  If it were, all Debtors could justify wage cuts simply by contending that

5   their workers are union members and therefore make more than they otherwise might, absent the

6   union.

7    Debtors proclaim that "[i]t is clear from the Debtors' one-year budget that Debtors have no

8   ability to continue operating if these excessive wages remain in place and modification is required

9   if there is to be any reorganization."  Debtors' § 1113 MPA at 11:20-21; Presley Declaration at ¶3.

10  Debtors neither attached the "one-year budget,"[17] nor explained why such cuts are necessary for

11  reorganization.  Debtors' conclusory allegations that they need to cut workers' wages and benefits

12  are far from sufficient to show, by a preponderance of the evidence, that these modifications are

13  necessary for reorganization.

14    Similarly, the Debtors argue, without providing any documentation supporting its assertion,

15  that it has found "quotes of replica insurance coverage" that are much lower than current costs.

16  Debtors' § 1113 MPA at 14:26.  While Debtors may indeed have found less costly health

17  insurance, this fact alone does not justify its necessity for reorganization.

18    Debtors then argue that the pension contributions are excessive.  Debtors are misleading

19  this Court; pension contributions cannot be excessive because *Debtors are not contributing*

20  *anything into either of the Union pension funds.*  Exhibit D to Gottesman Decl. 10.  As previously

21  stated, Debtors unilaterally ceased making all pension contributions for union employees, violating

22  § 1113(f); thus any argument that the pension contributions should be eliminated is moot.

23  _____

24  [16] Debtors purport to determine the "market rate" by "contacting the Economic Development
Offices for the City and County of Sacramento, and by obtaining data from the website: www.
Onetcenter.org." Debtors § 1113 MPA at 11.  The Unions' counsel has gone to Onetcenter.org and

25  looked under the "operator" job title.  Counsel found that the California median wage for operator
was $14.48/hour, as opposed to the $11.94/hour wage cited in Debtors' brief at 12:4., Exhibit K to

26  Gottesman Decl.  Even if "market rate" were the standard, this Court should not rely on Debtors'
unsupported assertions.

27  [17] At one point Debtors did send the Teamsters Local 324, and not Local 85, a one-page document
titled "Matterhorn Group, Inc. 12-Month Cash Collateral Budget," which may or may not be the

28  document referenced in the Debtors' papers.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

- 21 -

With regard to pension contributions and wage cuts, what Debtors really are seeking from this Court is retroactive approval for their previous unilateral changes to the CBAs. This is a corruption of the § 1113 process and should not be tolerated.

        **c)**     **Debtors have failed to show that maximization of the value of Debtors' business, through rejection of the CBAs, is necessary to reorganization**

Debtors argue that, although they allegedly will be forced to liquidate should they not sell their assets, Debtors need to maximize the value of the assets by rejecting or modifying the CBAs. As stated above, this position is nonsensical when viewed in conjunction with relevant federal labor laws regarding successorship. See Section IV(A) above.

Furthermore, even if rejection of the CBAs actually would increase the value of the assets, Debtors have provided nothing to support the contention that rejection of the CBAs is necessary to reorganization. In fact, Debtors' CEO Nathan Bell has stated under oath that the Debtors have "a very solid business with a product that's geographically viable," that Mr. Bell has "not seen a single indication of drop in volume from [their] customers," and that the Debtors' customers have "remained loyal and stuck with [them]." Exhibit D to Gottesman Decl. at 10-11. In their papers, the Debtors do not mention other cost-saving methods that exceed the alleged cost-savings of rejecting the Union CBAs. For example, Debtors estimate that they have lost $3 million dollars over the last 18-24 months on selling Crystal Light products, with "the greater portion of that [] in the last 12 months." *Id.* at 3. According to Mr. Bell, "things have been done to discontinue" the Crystal Light products, thus saving at least $1.5 million in losses per year. *Id.* at 5. The Debtors have also estimated that they've lost at least $1.25 million/year on a variety pack product for Costco, which they also plan on discontinuing. *Id.* at 6-7. Thus, from disposing of two unprofitable products, the Debtors will save at least $2.75 million/year—more than the entire projected "monetary burden" of the Local 85 and Local 324 CBAs. See Debtors' 1113 Motion at 22:25; Presley Decl. at ¶ 7; Bell Decl at ¶ 16.

        **d)**     **Debtors have no justifiable reason for extending the No Strike Clause**

Although their papers are not clear, Debtors *apparently* are asking this Court to reject all three CBAs in their entirety, *with the exception of the no-strike* clauses, which they wish the Court

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

1  to extend for 10 years—until 2020! This request *was not part of the proposals* Debtors made to the

2  Unions and which they now are seeking to defend as "necessary." Therefore, the Unions must

3  assume that Debtors are asking the Court to make this "modification" to the CBAs. By this

4  request, Debtors are asking the Court to violate the Union members' most fundamental labor

5  rights.

6       At its most basic, a collective bargaining agreement "trades off" terms and conditions of

7  employment with the contractual relinquishment of every worker's right to withhold his or her

8  employment. *See*, 29 U.S.C. § 151 (stating as U.S. policy the encouragement of the practice and

9  procedure of collective bargaining in order to curtail strikes and other forms of unrest that impair

10  the free flow of commerce). What Debtors seem to be proposing here is the rejection of the

11  protections of the CBAs, but that the central power of organized labor—the power to withhold

12  labor—would be relinquished for ten years.

13       While a No Strike Clause outside the four corners of a CBA would impose an

14  unenforceable restriction on the Unions (after all, the Unions would no longer be signatory to any

15  CBAs with the Debtors), the No Strike 10-year-extension request is indicative of Debtors' blatant

16  disregard for the procedural and substantive requirements of Section 1113, which require them to

17  propose *necessary* modifications to the CBAs, bargain in good faith, provide relevant information,

18  and then, if and only if the Unions reject the modifications without good cause, seek rejection of

19  the proposals. Debtors have failed on all accounts.

20  **4.  <u>Debtors did not provide the Unions with the information necessary to evaluate</u>**
21  **<u>the proposal</u>**

22       Debtors have provided Local 234 with little information relevant to evaluate the proposal,

23  and have provided Local 85 with even less. In order to meet its burden of providing the union with

24  relevant inform

25       ation, the debtor "must provide to the union enough information to justify each of its

26  proposed modifications." *In re K & B Mounting, Inc.*, 50 B.R. 460, 467-468 (Bankr. N.D. Ind.

27  1985).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

28

In denying a motion to reject a collective bargaining agreement, the *K & B Mounting* court found that the debtor should have provided the union "detailed projections and recommendations, perhaps made by a management consultant, preferably one who is independent of the interested parties. The debtor should [have] present[ed] full and detailed disclosure of its difficulties and its proposed short-run and long-run solutions." *Id.* at 467.

When debtors are trying to sell assets, as is the case here, the information necessary to properly evaluate a debtor's proposal includes information about the potential buyers. Courts have held that "the breadth and depth of the requisite information will vary with the circumstances." *In re Mesaba Aviation, Inc.*, 341 B.R. 693, 714 (Bankr. D. Minn. 2006). In *In re Bruno's Supermarkets* ("*Bruno's Supermarkets,*") LLC, 2009 Bankr. LEXIS 1366 (Bankr. N.D. Ala. Apr. 27, 2009), the debtor was seeking to sell its stores and reject its collective bargaining agreements. There the union had significant access to information regarding potential buyers of the debtor's estate. For example, the debtor provided the union with letters of intent from potential buyers, *id.* at *18-21, and provided further communications between potential buyers and the debtor's agents regarding the terms of the sale and whether the potential buyers were willing to assume the collective bargaining agreement. *Id.* at *20-21. The debtor also provided the union the opportunity to meet with the potential buyers. *Id.* at * 17-18, 31.

Here Debtors merely make the assertion that the collective bargaining agreements must be rejected to increase the chances of a sale, and has refused to divulge *any* information about prospective buyers. In order to determine whether the proposed modifications are in fact "necessary to permit the reorganization of the debtor," the unions must have access to the information about the potential buyers, as was provided in *Bruno's Supermarkets*.

As stated above, a potential buyer who is unconnected to the Debtors will be in a different position vis-à-vis the Unions than would be a buyer who is an alter ego of the Debtors. The Unions should be kept "in the loop" regarding any negotiations or information exchanges with potential buyers so the Unions may evaluate the proposals based on their knowledge of (and

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

1   possibly contacts with)[18] those entities.  Any conflicts between the Debtors and their creditors

2   (including the Unions) with regard to potential buyers should be aired in the judicial forum—and

3   not kept under wraps as seems to be case here.

4           **5.**     **Debtors fail to treat creditors, the Debtors, and all affected parties fairly and equitably**

5

6           Debtors have not shown that its proposed modifications are in any way fair and equitable.

7   The Debtors bear the burden of proving by a preponderance of the evidence that all creditors, the

8   debtor and all of the affected parties are treated fairly and equitably.  *In re Mesaba Aviation, Inc.,*

9   341 B.R. 693, 749 (Bankr. D. Minn. 2006) (noting that Mesaba "has the burdens of production and

10   persuasion" on the fair and equitable element); *In re Indiana Grocery Co., Inc.,* 136 B.R. 182, 194-

11   95 (Bankr. S.D. Ind. 1990) (holding that, "though necessary, . . . wage reductions must also be fair

12   and equitable" and that debtor "failed to prove that top management and creditors are bearing an

13   equitable burden in [its] reorganization, and thus, that all affected parties are treated fairly and

14   equitably").

15           Under § 1113, if a debtor fails to show that its shareholders, non-union employees, and

16   creditors make similar sacrifices, courts must not grant rejection.  *See, In re Elec. Contracting*

17   *Servs. Co.,* 305 B.R. 22, 28 (Bankr. D. Colo. 2003)("A debtor will not be allowed to reject a union

18   contract where it has demanded sacrifices of its union without shareholders, non-union employees

19   and creditors also making sacrifices.").

20           Here the Debtors have not provided *a shred* of evidence suggesting that management,

21   shareholders, non-union employees, or other interested parties have made *any* sacrifices leading up

22   to Debtors' reorganization.  In fact, the opposite is true.  While Debtors have unilaterally

23   eliminated contractually obligated pension contributions for all of its union workers, the Debtors

24   have requested that this Court approve salary *increases* to its non-union workers and management.

25

26

27

28

[18] It is possible that potential buyers have a pre-existing relationship with the Unions and would prefer a contract be in place.  It is possible that potential buyers would prefer the stability and comfort that accompanies labor peace to the uncertainty of strikes and discontented employees. The opposite is possible as well; but the Unions cannot determine whether the Debtors' claims are true without knowledge of the potential buyers.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

The Debtors ask that this Court grant a $5000 per month salary increase to Mr. Bell alone, along with other increases/retention bonuses to members of the Board of Directors, administration employees, management employees, financial analysts, the controller, the client development & Sales Operations Manager, the QA Team Leaders, Q & A Technicians, Production Managers, the Shipping Supervisor, Maintenance Managers, sales employees. *See* Amended Exhibits 1, 2 to Debtors' Motion for Authority to Use Cash Collateral Outside the Ordinary Course to Pay Non-Insider Retention Bonuses and Increases of Insider Compensation, Oct. 5, 2010. The Debtors have not delayed any payments to their landlords. Exhibit D to Gottesman Decl. at 10. The Debtors are current on their trade debt (even paying "cash in advance in some cases,") and are current on their utility bills. *Id.* at 9.

Yet, with all this, the Debtors propose to slash union health insurance contributions by 71% for Bakery Workers Local 85 members and by 70% for Teamsters Local 324 members, eliminate health insurance completely for seasonal workers, eliminate pension contributions for both unions, and decrease hourly wages for many workers to the California Minimum Wage. *See* Debtors' § 1113 MPA at 8:12-15; Exhibit D to Gottesman Decl. at 10; Exhibit 5 to Debtors' § 1113 MPA at 127, 150 (Under Local 324 Palletizers CBA, the packagers' and palletizers' rate is $8.00/hour, under Local 324 Operators' CBA, the packers' proposed rate is $8.00/hour.).

Given that there is no evidence of any burden placed upon any entity *other than union members*, there is just no basis upon which Debtors credibly can claim that the proposed modifications are "fair and equitable."

6. **The Debtors have not met at reasonable times to bargain over each Collective Bargaining Agreement**

Debtors have only met once, on September 20, to discuss their proposed modifications to the Local 85 CBA. Debtors adjourned this meeting without conducting any actual negotiations, because they stated they were unprepared to address certain issues, including withdrawal liability[19] and the effect of successor obligations in the event of sale. *See* Gottesman Decl. Exh. F. As of the

---

[19] Debtors face significant withdrawal liability (around $4.5 million for Vitafreze alone) if they were to withdraw from the Union pension plans. *See* Exhibit L to Gottesman Decl.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

date of this filing, Debtors have yet to meet with Local 324 to discuss their proposals, but do have a meeting planned. Given that Debtors have not met with Local 324 at all, and only have met with Local 85 once in an abbreviated session, Debtors do not meet this requirement.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

## 7. The Debtors have not bargained in good faith in an attempt to reach mutually satisfactory modifications

After unilaterally terminating all pension contributions and failing to institute contractually obligated wage increases, Debtors met only once with Local 85 and has not met at all with Local 324. As stated above, a Debtor *cannot* be deemed to have bargained in good faith with a union *after* unilaterally implementing aspects of its proposals prior to bargaining.

## 8. The Unions have not rejected any proposals—and certainly have not rejected proposals without good cause

The Unions have not rejected any proposals. Indeed, Debtors *have met* with the Debtors only regarding the Local 85 CBA. Debtors ended that meeting after virtually no discussion of the terms of their proposals, because they decided to seek and consult with labor counsel. *See* Exhibit F to Gottesman Decl.

The Unions have remained ready and willing to negotiate over the economic terms of the CBAs and proposals, and are willing to make serious concessions over terms that are necessary to the Debtors' reorganization. Even if the Unions *had* rejected the three proposals, however, there would have been good cause to do so; the Debtors have not provided information necessary to evaluate the proposals, the proposed modifications are not necessary for reorganization; some of the proposed modifications are not even economic at all, and the Debtors have not negotiated in good faith. Debtors have not met this *American Provision* requirement.

## 9. The balance of the equities does not favor rejection

The balance of equities does not clearly favor rejection of the CBAs -- no other conclusion can be derived from all of the above. *See, e.g., In re Express Freight Lines, Inc.*, 119 B.R. 1006, 1017-1018 (Bankr. E.D.Wis.1990) ("[S]ince . . . the debtor's proposal to reject the collective bargaining agreement contains modifications that are not necessary to the debtor's reorganization, the modifications are not fair to all affected parties, and the union rejected the modifications with good cause, then it follows that the debtor has not met its burden of proof on requirement number nine; that is, the balance of equities does not favor rejection."). A Collective Bargaining Agreement is "not an ordinary contract," as the Supreme Court has long recognized. *John Wiley &*

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

1  *Sons v. Livingston*, 376 U.S. 543, 550 (1964).  Among other things, the Collective Bargaining

2  Agreement provides the guarantee of negotiated terms and conditions of employment.  It formally

3  establishes the role of the Union as a collective bargaining representative in which the workers

4  have a voice, a vote, and the ability to act in a concerted way regarding their employment.  The

5  CBA provides a grievance procedure and guarantees a method of recourse for discriminatory

6  treatment by management and protection from being singled out unfairly.

7  Rejection of the CBAs would thus take away more than money – it would take not only

8  contractual rights but a measure of dignity that the members of the Unions have well earned.

9  Rejection would undermine the wage scales and benefit levels achieved over many years through

10  collective bargaining.  For all of these reasons, as well, the balance of equities weighs against

11  rejection of the Collective Bargaining Agreements and Debtors' § 1113 MPA must be denied.

12  **E.      MODIFICATION UNDER § 1113(f) IS NOT SIMPLY A JUDICIALLY
            PROSCRIBED ALTERNATIVE TO REJECTION AS DEBTORS SEEM TO**

13  **PROPOSE—IF THIS MOTION ACTUALLY REQUESTS MODIFICATION, IT
     MUST BE DENIED**

14

15  Although styled as a Motion to Modify or Reject Collective Bargaining Agreements, and

16  although Debtors make various statements regarding the modifications they assert are necessary for

17  reorganization, Debtors conclude with the flat request that the CBAs be rejected.  Debtors' § 1113

18  MPA at 31.  The Unions, therefore, are left with a moving target: what relief are the Debtors

19  seeking?  Further, this ambiguity is fatal procedural error: a motion to modify a CBA is evaluated

20  by a different standard from a motion to reject, and Debtors here apparently have combined the

21  two motions and ignored the special standard and conditions for modification articulated by

22  § 1113(e).

23  Further, as an alternative to rejection, Debtors seem to be seeking a judicially determined

24  set of CBAs, i.e., including the "modifications" they urge are "necessary."  Debtors' counsel seem

25  to believe that the Bankruptcy Court may choose various items from column A and from column B

26  and fashion CBAs between the parties pursuant to its *own* judgment—but this is not permitted by

27  the statute.

28  ///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

1.  **Courts Have the Power to Grant Relief Under § 1113(e) _Only_ for the Interim Period Between the Scheduling of a Hearing Pursuant to § 1113(b) and the Final Relief Granted, if any, under that Section—the Court May Not Grant the Permanent or Long-term Modifications Apparently Requested**

The clear language of § 1113 provides a debtor in possession with steps it must take should the debtor wish to modify or reject a collective bargaining agreement. Section 1113(e) establishes procedures for debtors to seek very extraordinary and very limited emergency interim relief from their CBAs without complying with all of the requirements of Section 1113(c). The Court may not authorize modifications except for "interim changes" under § 1113(e), for the period of a pending motion to reject. Section 1113(e) provides, in relevant part:

> If during a period when the collective bargaining agreement continues in effect, and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by the collective bargaining agreement.

The structure of § 1113 is significant. In § 1113(a), Congress specified that its procedures were exclusive. In subsection (b), the debtor is required to make a proposal, provide information, and bargain with the union in good faith, in that order, before making a motion to reject. In (c), the standards for court approval of such a motion are set forth. In (d), the scheduling of a hearing, and the consequences of non-decision by the court are addressed. Finally, in (e), there is a provision for temporary, interim relief between the time of the filing of the motion in (b) and the decision on the motion in (d). It is between these two things that subsection (e) is "interim."

The statute clearly does not contemplate an "interim" relief motion outside of the context of an ongoing rejection proceeding. In fact, subsection (e) specifically states that "[t]he implementation of such interim changes shall not render the application for rejection moot." Congress here used the definite article ("the application for rejection," not "any application for rejection"), signifying that it contemplated a proceeding under subsection (b) must be pending for § 1113(e) to come into play. _See, also, In re Ionosphere Clubs._ 139 B.R. 772 (S.D. N.Y. 1992) (vacating order of interim relief in part because no application to reject was pending).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 30 -

1    A corollary to this proposition is that the Court may order any emergency modifications

2    under § 1113(e) only until the motion to reject is decided. "Interim relief is available only until the

3    hearing process is completed—normally within two months, see § 1113(d)(1), (2)." *In re*

4    *Ionosphere Clubs. Inc.*, 139 B.R. 772, 780 (S.D.N.Y. 1992) (emphasis added). The court thus

5    concluded that "the structure of the section, the legislative history and the statements off the Court

6    of Appeals strongly suggest that interim relief granted pursuant to § 1113(e) should be of limited

7    duration." *Id.* at 780-781.

8        The relief sought under a § 1113(e) motion must be temporary in nature. The Debtors here

9    apparently seek what is a permanent change of indefinite duration – wage reductions, a retroactive

10   approval of their cessation of pension contributions, a roll-back in healthcare benefits, and, last but

11   not least, *a 10 year extension* of the No Strike Clause. There is no limit upon how long these terms

12   will last, and indeed, they are merely the reiteration of some of the Debtors' ultimate demands in

13   bargaining with the addition of the No Strike extension. Section 1113(e) was not intended to grant

14   this type of relief, which in effect circumvents the entire statute in the guise of an "interim"

15   measure. If the Unions are reading Debtors' Motion correctly, the relief the Debtors seek is clearly

16   intended to be "permanent" and "indefinite," not "temporary" and "interim."

17       2.    **Debtors Have Not Addressed or Met the "Essential" Standard for Modification**

18       Interim relief granted by a court must be "essential." Therefore, interim modifications to a

19   collective bargaining agreement must be limited to the bare minimum, short term requirements for

20   a debtor's immediate survival. *See Truck Drivers Local 807 v. Carey Transportation, Inc.*, 816

21   F.2d 89 (2d Cir. 1987) (stating, in dicta, that "the 'essential' changes ... must be measured against

22   whether a debtor will collapse without the change"); *see also Landmark Hotel & Casino. Inc.*,

23   78 B.R. 575, 584 (9th Cir. B.A.P. 1987) ("In the interim relief context, the court focuses on the

24   'bare minimum requirements for short-term survival,' which is different from the 'necessary'

25   changes that will enable the Debtor to complete the reorganization process successfully if the

26   contracts were fully rejected."); *In re Salt Creek Freightways*, 46 B.R. 347, 349-350 (Bankr. D.

27   Wyo. 1985) (approving interim changes upon debtor's showing that they were necessary to enable

28   it to continue in business more than one week without changes). Accordingly, in order to obtain

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 31 -

the proposed interim relief, the Debtors must establish that without the interim changes, they will cease operations and their employees will lose their jobs. *See Salt Creek*, 46 B.R. at 350. Debtors have not made this showing, so, to the extent Debtors' Motion seeks modification of the CBAs, it must be denied.

## IV.    CONCLUSION

For the foregoing reasons, Debtor's § 1113 Motion to reject the CBAs must be denied.

Dated: October 18, 2010

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

By:    /s/ Christian L. Raisner
       CHRISTIAN L. RAISNER
       Attorneys for Creditor
       The Bakery, Confectionery, Tobacco Workers
       Union Local No. 85 and Teamsters Local 324

125590/593273

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001