2010-39672
FILED
November 10, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003064850

1 | RON BENDER (SBN 143364)
2 | TODD M. ARNOLD (SBN 221868)
  | J.P. FRITZ (SBN 245240)
3 | LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
  | 10250 Constellation Boulevard, Suite 1700
4 | Los Angeles, California 90067
  | Telephone: (310) 229-1234
5 | Facsimile: (310) 229-1244
6 | Email: rb@lnbyb.com; tma@lnbyb.com; jp@lnbyb.com

7 | Attorneys for Chapter 11 Debtors and Debtors in Possession

8 | **UNITED STATES BANKRUPTCY COURT**
  | **EASTERN DISTRICT OF CALIFORNIA**
9 | **(SACRAMENTO DIVISION)**

10 | In re:

11 | MATTERHORN GROUP, INC.,
12 |
13 |     Debtor.

14 | ―――――――――――――――――――

15 | VITAFREZE FROZEN CONFECTIONS, INC.,
16 |
17 |     Debtor.

18 | DELUXE ICE CREAM COMPANY,
19 |
20 |     Debtor.

21 | ☒ Affects ALL DEBTORS
   | ☐ Affects only MATTERHORN GROUP, INC.
22 | ☐ Affects only VITAFREZE FROZEN
   |     CONFECTIONS, INC.
23 | ☐ Affects only DELUXE ICE CREAM COMPANY

Lead Case No. 10-39672 (MSM)
Jointly Administered with Case Nos. 10-39664 (MSM), and 10-39670 (MSM).

DC No. LNB-16

Chapter 11 Cases

**REVISED ORDER: (1) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS (EXCLUDING CASH AND AVOIDANCE CAUSES OF ACTION) FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS; (2) APPROVING DEBTORS' ASSUMPTION AND ASSIGNMENT AND REJECTION OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND DETERMINING CURE AMOUNTS; AND (3) WAIVING THE 14-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d)**

Hearing:
Date: November 10, 2010
Time: 10:00 a.m.
Place: Department A
      Judge Michael S. McManus
      Courtroom No. 28

RECEIVED
November 10, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003064850

Floor No. 7
Robert T. Matsui Courthouse
501 I Street
Sacramento, CA 95814

2

The Court conducted hearings on November 8 and 10, 2010 (the "Sale Hearing") upon the motion (the "Sale Motion") filed by Matterhorn Group, Inc. ("MGI"), Vitafreze Frozen Confections, Inc. ("Vitafreze"), and Deluxe Ice Cream Company ("Deluxe"), the debtors and debtors in possession in the above-captioned, jointly administered Chapter 11 bankruptcy cases (collectively, the "Debtors"), seeking this Court's authorization for the Debtors to sell certain assets (the "Purchased Assets") and to assume and assign certain unexpired leases and executory contracts ("Assumed Contracts") to Foster Dairy Farms, a California corporation ("Purchaser"), out of the ordinary course of business and free and clear of all liens, encumbrances, claims and interests pursuant to 11 U.S.C. §§105, 363(b) and (f), and 365, pursuant to various provisions of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and applicable local rules of this Court. Due and sufficient notice of the Sale Motion and the Sale Hearing having been given, and the Court having found good and sufficient cause appearing to grant the relief as set forth in this Order:

IT IS HEREBY FOUND that:

A.     On July 26, 2010 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business as Debtors in Possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

B.     This Court has jurisdiction over the Sale Motion and over property of the Debtors, including the Assets to be sold, transferred or conveyed, pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding. Venue of these cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3

C.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. Section 158(a).  To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of this Order.

D.     The Debtors are private companies in the business of manufacturing (1) self-branded products for grocery retailers, (2) products from brand licenses held by the Debtors, such as Mike and Ike™, HotTamales™, and Zours™ popsicles, (3) co-branded products, and (4) the Debtors' own products, including the Debtor's Oh My! Goodness™ branded products.

E.     The Debtors have three secured creditors in KeyBank National Association, a National Banking Association (the "Bank"), Pacific Mezzanine Fund L.P. ("PMF") and CC&B Holdings, Inc. ("CC&B").

F.     During their bankruptcy cases, the Debtors concluded that the only viable option available to the Debtors to avoid a shut down and liquidation of their business would be for the Debtors to sell substantially all of their assets (excluding cash and avoidance causes of action) to the highest bidder. The Debtors have been engaged in an active sale process since the Court approved the Debtors' proposed bidding procedures at a hearing held on October 4, 2010 (the "Bidding Procedures").

G.     To assist the Debtors with this sale process, the Debtors engaged Sherwood Partners, LLC ("Sherwood") as their investment banker.  Sherwood has been serving as the Debtors' financial advisor since the Petition Date.  Sherwood, working with the Debtors, conducted a sale process, which involved the preparation of sale materials and discussions and interactions with a number of prospective buyers, both strategic buyers and financial buyers.

4

H.    After having engaged in due diligence and negotiations with a number of prospective buyers, Sherwood conducted an auction sale ("Auction Sale") on November 5, 2010 in accordance with the Bidding Procedures.    A total of three prospective buyers, including Purchaser, were deemed financially qualified by Sherwood and appeared at the Auction Sale.

I.    In connection with the Bidding Procedures, the Debtors prepared a template asset purchase agreement for prospective buyers to use.  Prospective buyers were authorized to provide the Debtors prior to the Auction Sale any requested changes to the template asset purchase agreement.  Filed on November 9, 2010 as Amended Exhibit "1" to this Order (filed as Docket Number 467) is a copy of the final version of the asset purchase agreement (the "APA"), without Exhibits or Schedules, which has been agreed to by Purchaser and the Debtors, as it may be amended from time to time.  All terms which are defined in the APA but which are not defined in this Order shall have the definitions provided for in the APA.

J.    The Purchased Assets proposed to be sold by the Debtors to Purchaser are defined in Section 2.1 of the APA.  The Debtors estimate, and the Court finds, that a liquidation of the Purchased Assets would have materially less value than the Purchase Price being paid by Purchaser as set forth in Section 3.1 of the APA.

K.    The APA provides that the Debtors shall sell to Purchaser the Purchased Assets and the Debtors shall assume and assign to Purchaser the Assumed Contracts and the Assumed Leases.  Section 2.2 of the APA sets forth those assets which are not being purchased by Purchaser and are Excluded Assets.  The Excluded Assets include all of the Debtors' cash and avoidance causes of action.

L.    The Cash Purchase Price to be paid by Purchaser is as set forth in Section 3.1 of the APA, which shall be paid by Purchaser to the Debtors at the time of the closing of the sale (the "Closing").

5

M.     At the Closing, the Debtors also seek to assume and assign the Assumed Contracts and the Assumed Leases to Purchaser, and, effective as of the Closing, the Debtors seek to reject all of their executory contracts and unexpired leases which are not assumed and assigned to Purchaser.

N.     The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances for them to enter into the APA, sell the Assets and assume and assign the Assumed Contracts and the Assumed Leases under Bankruptcy Code Sections 363, 365, 1123 and 1141 and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors', their estates and their creditors.   The exigent circumstances and other facts which support the exercise of the Debtors' business judgment include the following:

i.     The Debtors undertook an intensive sale effort using an independent investment banker in Sherwood to conduct the sale process;

ii.     An open Auction Sale took place for a sale of the Purchased Assets at which any financially qualified bidder was invited to participate in the Auction Sale and Purchaser submitted the highest and best bid at the Auction Sale;

iii.     The Debtors' business is suffering continuous operating losses and the Debtors' cash reserves are being depleted to the point where the Debtors concluded that absent an expedited sale of their assets the Debtors would have to close their business and liquidate their assets, which the Debtors believe would substantially impair the value of their assets;

iv.     Any further delay by the Debtors to seek alternative or higher prices for their assets would pose an unacceptable risk to the Debtors' business and likely result in a further reduction in the value of the Debtors' overall assets and impair the value of the Debtors' business;

6

v.     The Debtors are in default under their loan agreement with the Bank, and the Bank was not willing to consent to any further use by the Debtors of the Bank's cash collateral unless the Debtors engaged in an expedited sale of their assets; and

vi.     The Debtors lack the cash necessary to sustain their operations on any long-term basis and no additional financing is available to the Debtors.  As a result, absent an expedited sale of their assets, the Debtors will be forced to immediately cease their operations and liquidate their assets, which would result in a substantially lower net recovery for the Debtors' estates than the Debtors will net in their proposed sale to Purchaser.

THE COURT FURTHER FINDS AND CONCLUDES AS FOLLOWS:

O.     The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the foregoing findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

P.     The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations contained in this Order are (i) Bankruptcy Code Sections 102, 105(a), 363 and 365 and (ii) Bankruptcy Rules 2002, 6004, 6006, and 9014.

Q.     As evidenced by the affidavits of service filed with the Court, proper, adequate, and sufficient notice of the Sale Motion, the Auction Sale and the Sale Hearing have been provided in accordance with Bankruptcy Code Sections 102(1), 105, 363(b), and 365 and in compliance with Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008, and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution and in compliance with the Bidding Procedures.  The Debtors also provided due and proper notice of the assumption, sale, and

7

assignment of each Assumed Contract and Assumed Lease to each non-debtor party under each such Assumed Contract and Assumed Lease. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, the Auction Sale, the Sale Hearing, the assumption and assignment of the Assumed Contracts and Assumed Leases (including with respect to the payment of any cure amounts due thereunder), or of the entry of this Order is necessary or shall be required.

R.     A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested parties including: (i) all entities that claim any interest in or lien upon the Assets; (ii) all parties to Assumed Contracts or Assumed Leases assumed and sold and assigned pursuant to this Order; (iii) all governmental taxing authorities that have, or as a result of the sale of the Assets may have, claims, contingent or otherwise, against the Debtors; (iv) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (v) all known creditors (whether liquidated, contingent or unmatured) of the Debtors; (vi) all taxing authorities in the jurisdiction in which the Debtors operate (vii) all interested governmental, pension and environmental entities known by the Debtors to assert jurisdiction over the Debtors and to have in interest in the proposed Sale; (viii) the Office of the United States Trustee; (ix) counsel to any official Committee appointed in these cases; (x) counsel to the Debtors' pre and post petition secured lenders; (xi) the Bakery, Confectionary, Tobacco workers and Grain Millers' International Union Local No. 85, Geleral Teamsters Local 324, the Northern California Bakery and Confectionary Health and Welfare Fund, the B&C Western Conference Dental Fund, the Bakery and Confectionary Union and Industry International Pension Fund and the Western Conference of Teamster Pension Fund; (xii) the Pension Benefit Guaranty Corporation; and (xiii) entities known by the Debtors with an interest in purchasing the Assets. Other parties interested in

bidding on the Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Assets.

S.    The Purchased Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates pursuant to Bankruptcy Code Section 541.

T.    The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances requiring them to enter into the APA, to sell the Purchased Assets, and to assume and assign the Assumed Contracts and Assumed Leases under Bankruptcy Code Sections 105(a), 363 and 365, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.    There can be no assurance that the value of the Purchased Assets would be maintained if any delay in the consummation of the transactions contemplated in the Sale Motion and APA were to occur.    Likewise, there can be no assurance that Purchaser would be willing to complete such transactions if delay in the consummation of the transactions were to occur.    The Bidding Procedures were non-collusive, substantively and procedurally fair to all parties and were reasonable and appropriate in the context of these cases.

U.    As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a sale process conducted by Sherwood in accordance with the Bidding Procedures, the Debtors and their professionals have complied, in good faith, in all respects with the Bidding Procedures Order and have (a) afforded interested potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest and/or otherwise best offer to purchase the Purchased Assets at the Auction Sale, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets at the Auction Sale, and (c) conducted the Auction Sale on November 5, 2010.

9

V.    At the conclusion of the Auction Sale, the Debtors (with the consent of the Bank and the Creditors' Committee) announced that they had determined, and the Court so finds, that the offer submitted by Purchaser was the highest and best offer and therefore concluded to be the winning bid submitted at the Auction Sale.

W.    The winning bid submitted by Purchaser at the Auction Sale, on the terms and conditions set forth in the APA, including the form and total consideration to be realized by the Debtors pursuant to the APA, (i) is the highest and/or best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' estates and the creditors thereof; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Purchased Assets; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

X.    Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and as interpreted by the Courts regarding the meaning of Bankruptcy Code Section 363(m). The APA was negotiated and entered into in good faith, based on arm's-length bargaining, and without collusion or fraud of any kind. The Auction Sale was conducted in accordance with the Bidding Procedures and in good faith within the meaning of Bankruptcy Code Section 363(m). Based on the record before this Court, neither the Debtors nor Purchaser has engaged in any conduct that would prevent the application of Bankruptcy Code Section 363(m) or cause the application of or implicate Bankruptcy Code Section 363(n) to the APA or to the consummation of the sale transaction and transfer of the Purchased Assets and Assumed Contracts and Assumed Leases to Purchaser. Purchaser is therefore entitled to all of the protections of Bankruptcy Code Section 363(m), including with respect to all of the Purchased Assets.

10

Y.     The Debtors have full power and authority to execute the APA and all other documents contemplated thereby, and the sale of the Purchased Assets to Purchaser as contemplated by the APA has been authorized and approved by the Debtors in accordance with the requirements of state law and its internal governance requirements.  Other than as may be expressly provided for in the APA, no further consents or approvals are required by the Debtors to consummate such transactions.

Z.     The Debtors have advanced sound business reasons for seeking to enter into the APA and to sell the Purchased Assets and to assume and assign the Assumed Contracts and Assigned Leases, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Purchased Assets and to consummate the transactions contemplated by the APA.  Notwithstanding any requirement for approval or consent by any person, the transfer of the Purchased Assets to Purchaser and the assumption and assignment of the Assumed Contracts and Assumed Leases is a legal, valid, and effective transfer of the Debtors' right, title and interest in the Purchased Assets and any Assumed Contracts and Assumed Leases.

AA.     The terms and conditions of the APA, including the consideration to be realized by the Debtors pursuant to the APA, are fair and reasonable, and the transactions contemplated by the APA are in the best interests of the Debtors' estates.

BB.     Except as otherwise provided in the APA, the Purchased Assets shall be sold free and clear of all "Encumbrances" and "Interests" (as defined in the APA) with the Encumbrances and Interests to attach to the net proceeds to be received by the Debtors in the same validity and priority and subject to the same defenses and avoidability, if any, as before the Closing.  Purchaser would not enter into the APA to purchase the Purchased Assets or accept an assignment of the Assumed

REVISED SALE ORDER

Contracts and Assumed Leases in the absence of the entry of this Order providing for such sale, assumption and assignment free and clear of all such Encumbrances and Interests.

CC.    The transfer of the Purchased Assets to Purchaser will be a legal, valid, and effective transfer of the Purchased Assets, and, except as may otherwise be provided in the APA, shall vest Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of any and all Encumbrances and Interests.  Except for the Assumed Liabilities as specifically provided in the APA or this Order, Purchaser shall not assume or become liable for any Encumbrances or Interests relating to the Purchased Assets being sold by the Debtors.

DD.    Bankruptcy Code Section 363(f) provides for the sale of property of the estates free and clear of the Encumbrances and Interests upon the grounds stated in that subsection.  All Encumbrances and Interests shall attach to the net proceeds of the sale of the Purchased Assets received by the Debtors in the order of their priority, with the same validity, force, and effect that they now have, if any, as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto.  All persons having Encumbrances or Interests of any kind or nature whatsoever against or in the Debtors or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Encumbrances or Interests against Purchaser, any of its assets, property, successors or assigns, or the Purchased Assets.

EE.    The Debtors may sell the Purchased Assets to Purchaser free and clear of the Encumbrances and Interests because, in each case, one or more of the standards set forth in Bankruptcy Code Section 363(f) has been satisfied.  Those (i) holders of Encumbrances or Interests and (ii) non-debtor parties, who did not object, or who withdrew their objections, to the sale of the Assets and the Sale Motion are deemed to have consented pursuant to Bankruptcy Code § 363(f)(2). All objections to the Sale Motion have been resolved or withdrawn or overruled. Those holders of Encumbrances or

Interests who did object fall within one or more of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having their Liens, Claims, Encumbrances and Interests, if any, attach to the proceeds of the sale of the Assets ultimately attributable to the property against or in which they claim or may claim any Encumbrances.

FF.    Not selling the Purchased Assets free and clear of all Encumbrances and Interests would adversely impact the Debtors' estates, and the sale of the Purchased Assets other than free and clear of all Encumbrances and Interests would be of substantially less value to the Debtors' estates.

GG.    The Debtors and Purchaser have, to the extent necessary, satisfied the requirements of Bankruptcy Code Section 365, including Bankruptcy Code Sections 365(b)(1)(A), (B) and 365(f), in connection with the sale and the assumption and assignment of the Assumed Contracts and Assigned Leases.  Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed Contracts and Assumed Leases pursuant to Bankruptcy Code Section 365(b)(1)(C).  The Debtors' assumption and assignment of the Assumed Contracts and Assumed Leases to Purchaser is in the best interests of the Debtors' estates and represents the exercise of sound and prudent business judgment by the Debtors.

HH.    The Assumed Contracts and Assigned Leases are assignable notwithstanding any provisions contained in the Assumed Contracts and the Assigned Leases to the contrary.  The Debtors have provided for the cure and/or other payments or actions required to assume and assign the Assumed Contracts and Assigned Leases to Purchaser.

II.    Purchaser will be acting in good faith, pursuant to Bankruptcy Code Section 363(m), in consummating the transactions contemplated by the APA at any time on or after the entry of this Order.

13

JJ.     The transactions contemplated under the APA do not amount to a consolidation, merger, or de facto merger of Purchaser and the Debtors and/or the Debtors' estates; there is not substantial continuity between Purchaser and the Debtors; there is no continuity of enterprise between the Debtors and Purchaser; Purchaser is not a mere continuation of the Debtors or their estates; and Purchaser does not constitute a successor to the Debtors or their estates under any federal or statutory or common law, including but not limited to the California Labor Code ("LC"), the California Industrial Welfare Commission Orders ("IWC Orders"), the California Government Code ("GC"), the Fair Employment and Housing Act ("FEHA"), the California Family Rights Act ("CFRA"), the California Civil Code ("CC"), the California Business and Professions Code ("UC"), Title VII of the Civil rights Act of 1964, as amended ("Title VII"), the Age Discrimination Act in Employment Act ("ADEA"), the Americans with Disability Act ("ADA"), the  Family Medical Leave Act ("FMLA"), the National Labor Relations Act ("NLRA"), the Labor Management Relations Act ("LMRA"), the Employee Retirement Income Security Act ("ERISA"), the Multiemployer Pension Protection Act ("MEPPA"), the Pension Protection Act ("PPA"), the Fair Labor Standards Act ("FLSA"), the Employee Retirement Income and Security Act ("ERISA"), the Norris-LaGuardia Act ("NLA"), and/or Title 29 of the United States Code.

KK.     The sale of the Purchased Assets outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The sale does not constitute a sub rosa chapter 11 plan.

LL.     The total consideration provided under the APA by Purchaser for the Purchased Assets is the highest and/or best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair

14

consideration under the Uniform Fraudulent Transfer Act, and (c) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States for the Purchased Assets.

MM.    Time is of the essence in consummating the sale.  To maximize the value of the Purchased Assets and the Assumed Contracts and Assumed Leases, it is essential that the sale of the Purchased Assets and the assumption and assignment of the Assumed Contracts and Assumed Leases occur as soon as possible.  Accordingly, there is cause to lift the 14-day stays imposed by Bankruptcy Rules 6004 and 6006.

NN.    Except for the Assumed Liabilities and its obligations under the APA, the transfer of the Purchased Assets pursuant to this Order shall not subject the Purchaser to any liability with respect to any obligations incurred in connection with or in any way related to the Purchased Assets prior to the date of Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination or successor or transferee liability.

BASED UPON THE FOREGOING FINDINGS AND CONCLUSIONS, AND UPON THE RECORD MADE BEFORE THIS COURT AT THE SALE HEARING, AND GOOD AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.    The Sale Motion is granted, subject to the terms and conditions set forth in this Order.

2.    All objections and responses to the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.  If any such objection or response was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

15

3.     Notice of the Sale Hearing was fair and appropriate under the circumstances and complied in all respects with Bankruptcy Code Section 102(1) and Bankruptcy Rules 2002, 6004, and 6006.

4.     The sale of the Purchased Assets, the terms and conditions of the APA (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby are approved in all respects.

5.     The sale of the Purchased Assets and the assumption and assignment of the Assumed Contracts and the Assumed Leases and the consideration provided by Purchaser under the APA is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.     Purchaser is hereby granted and is entitled to all of the protections provided to a good-faith purchaser under Bankruptcy Code Section 363(m), including with respect to the transfer of the Assumed Contracts and Assumed Leases as part of the sale of the Purchased Assets pursuant to Bankruptcy Code Section 365 and this Order.

7.     The Debtors are authorized and directed to fully assume, perform under, consummate, and implement the terms of the APA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA and this Order and the sale of the Purchased Assets contemplated thereby, and to take all further actions as may reasonably be requested by Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to Purchaser or reducing to possession any or all of the Purchased Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the APA, without any further corporate action or orders of this Court.

8.     The Debtors and each other person or entity having duties or responsibilities under the APA, any agreements related thereto or this Order, and their respective directors, officers, employees,

members, agents, representative, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the APA, to carry out all of the provisions of the APA and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the APA, and any related agreements; to take any and all actions contemplated by the APA, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the APA, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further notice to any person, application to, or order of, the Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities.  The officers, directors, or any other authorized representative of the Debtors are authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable).  The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the APA, any related agreements and this Order.

9.      Effective as of the Closing, the sale of the Purchased Assets by the Debtors to Purchaser shall constitute a legal, valid, and effective transfer of the Debtors' right, title and interest in the Purchased Assets notwithstanding any requirement for approval or consent by any person, and shall

vest Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets, free and clear of all Encumbrances and Interests of any kind, pursuant to Bankruptcy Code Sections 363(f) and (b).

10. The assumption of any Assumed Liabilities by Purchaser shall constitute a legal, valid and effective delegation of any Assumed Liabilities to Purchaser and shall divest the Debtors of all liability with respect to any Assumed Liabilities, and the assignment and assumption of the Assumed Contracts by Purchaser shall constituted a legal, valid and effective assumption of the Assumed Contracts by Purchaser, and shall divest the Debtors of all liability with respect to the future performance of the Assumed Contracts and Assumed Leases by Purchaser.

11. The sale of the Purchased Assets is not subject to avoidance pursuant to Bankruptcy Code Section 363(n).

12. Except to the extent specifically provided in the APA, upon the Closing pursuant to the APA, the Debtors are authorized, empowered, and directed, pursuant to Bankruptcy Code Sections 105(a), 363(b) and 365, to sell the Purchased Assets to Purchaser. The sale of the Purchased Assets shall vest Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of any and all Encumbrances, Interests, and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise, with all such Encumbrances and Interests to attach to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Purchased Assets, subject to all claims and defenses the Debtors may possess with respect thereto.

18

13.     Following the date of the Closing, no holder of any Encumbrances in the Purchased Assets shall interfere with Purchaser's use and enjoyment of the Purchased Assets based on or related to such Encumbrances, or any actions that the Debtors may take in their Chapter 11 cases, and no person shall take any action to prevent, interfere with, or otherwise enjoin consummation of the transactions contemplated in or by the APA or this Order.

14.     The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Encumbrances and Interests, other than Assumed Liabilities, shall be self-executing, and neither the Debtors nor Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or instruments to effectuate, consummate, and implement the provisions of this Order.  However, the Debtors and Purchaser, and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or Purchaser deem necessary or appropriate to implement and effectuate the terms of the APA and this Sale Order.  Moreover, effective as of the date of the Closing (the "Closing Date"), Purchaser and its successors and assigns shall be designated and appointed the Debtors' true and lawful attorney and attorneys, with full power of substitution, in the Debtors' name and stead, on behalf and for the benefit of Purchaser, its successors and assigns, to demand and receive any and all of the Purchased Assets and to give receipts and releases for and in respect of the Purchased Assets, or any part thereof.

15.     Purchaser and its successors and assigns, may from time to time as deemed appropriate institute and prosecute in the Debtors' name, for the benefit of Purchaser, its successors and assigns, any and all proceedings at law, in equity or otherwise, which the Purchaser, its successors and assigns may deem proper for the collection or reduction to possession of any of the Purchased Assets, and to do all acts and things with respect to the Purchased Assets that Purchaser or its

19

successors and assigns shall deem desirable.  The foregoing powers are coupled with an interest and are irrevocable by the Debtors.

16.     The Debtors' creditors are authorized to execute such documents and take all other actions as may be necessary to release, promptly after the Closing, any Encumbrances of any kind against the Purchased Assets, as such Encumbrances may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing any Encumbrances in or against the Purchased Assets shall not have delivered to the Debtors prior to the Closing after request therefore, in proper form for filing after the Closing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Encumbrances that the person or entity has with respect to the Purchased Assets, the Debtors are hereby authorized and directed to execute such statements, and empowered to perform under, all instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets after the Closing, and the Purchaser is authorized to file such documents after the Closing.

17.     To the greatest extent available under applicable law, Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to Purchaser as of the Closing Date.

18.     All of the Debtors' rights, title and interests in the Purchased Assets to be acquired by Purchaser under the APA shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in Purchaser.  Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment,

20

conveyance, and transfer of the Purchased Assets under the APA transferring good and marketable, indefeasible title and interest in the Purchased Assets to Purchaser.

19.     Except for the Assumed Liabilities as expressly provided in the APA, Purchaser is not assuming nor shall it or any affiliate of Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the consummation of the transactions contemplated by the APA, or any liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing of other conditions existing on or prior to consummation of the transactions contemplated by the APA.

20.     Purchaser shall have no obligation to pay or provide wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment to current or former employees of the Debtors and their eligible dependents and beneficiaries, except as set forth in the APA. Furthermore, (a) Purchaser shall have no obligation or liability, as a successor or otherwise, arising from or related to the breach, non-performance, rejection or termination of any such plan or agreement including, but not limited to, any Collective Bargaining Agreement between Debtors and the Bakery, Confectionary, Tobacco Workers and Grain Millers' International Union Local No. 85, General Teamsters Local 324 and any and every Trust Agreement and Declaration of Trust between Debtors and Northern California Bakery and Confectionary Health and Welfare Fund, the B&C Western Conference Dental Fund, the Bakery and Confectionary Union and Industry International Pension Fund and the Western Conference of Teamster Pension Plan ("Labor Agreements"), (b) Purchaser shall in no way be deemed a party to or assignee of any such Labor Agreements, (c) no employee of the Purchaser shall be deemed in any way covered by or a party to any such Labor Agreement, and

21

(d) all third party beneficiaries or parties to any such Labor Agreement are hereby enjoined from asserting against Purchaser any and all claims arising from or relating to such Labor Agreement. Purchaser shall have no obligation or liability, as a successor or otherwise, for any of the acts or omissions of the Debtors that may later be found to constitute unfair labor practices.

21.    Neither Purchaser nor its affiliates shall be deemed, as a result of any action taken in connection with the purchase of the Assets or as a result of the consummation of the transactions contemplated by the APA or any  other event occurring in these Chapter 11 Cases under any theory of law or equity, to (a) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the APA) within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine and Purchaser and its affiliates shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 210 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, the LC, IWC Orders, GC, FEHA, CFRA, the CC, the UC, Title VII, the ADEA, the ADA"), the FMLA, the NLRA, the LMRA, the ERISA, MEPPA, the PPA, the FLSA, the NLA, and/or Title 29 of the United States Code or other applicable laws; (b) have, de facto or otherwise, merged with or into any of the Debtors; (c) be a mere continuation of the Debtor or their estates (and there is not substantial continuity between the Purchaser and the Debtors, there is no common identity between the Purchaser and the Debtors, and there is no continuity of

22

enterprise between the Purchaser and the Debtors); or (d) be holding itself out to the public as a continuation of the Debtors. Except for the Assumed Liabilities, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Purchased Assets or otherwise. Without limiting the generality of the foregoing, and except for the Assumed Liabilities, the Purchaser shall not be liable for, and shall be released and forever discharged from, any and all claims, causes of action, obligations, liabilities, demands, losses, costs or expenses of any kind, character or nature whatsoever against the Debtors or any of their predecessors or affiliate, and the Purchaser, and each of its Affiliates shall have no successor, vicarious or other liabilities of any kind or character including but not limited to any theory of antitrust, environmental, successor or transferee liability, withdrawal liability, labor law, contract law, common law, bulk sales laws (to the extent permitted under the Bankruptcy Code), de facto merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with or in any way relating to the operation of the debtors' business prior to the Closing. Notwithstanding the foregoing, nothing herein shall be held to limit any bargaining obligations that may arise pursuant to the NLRA, subsequent to the Closing of the sale or other obligations arising under the NLRA consistent with the application of the Bankruptcy Code.

22. Except as otherwise expressly provided in the APA, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to Purchaser on the Closing Date or at such time thereafter as Purchaser may request.

23.     The provisions of the APA relating to the assumption and assignment of the Assumed Contracts and Assumed Leases are valid and binding, in full force and effect, and enforceable in accordance with their terms.   The Contract Assignments and Lease Assignments are valid and binding, in full force and effect, and enforceable in accordance with their terms.

24.     Subject to the terms of the APA, the Contract Assignments and Lease Assignments and the occurrence of the Closing, in accordance with Bankruptcy Code Sections 363 and 365, Purchaser shall be fully and irrevocably vested with all of the Debtors' right, title and interest of each of the Assumed Contracts and Assumed Leases.   The Debtors shall cooperate with, and take all actions reasonably requested by, Purchaser to effectuate the foregoing.

25.     Subject to the terms of the APA and the occurrence of the Closing Date, the assumption by the Debtors of the Assumed Contracts and Assumed Leases and the assignment of the Assumed Contracts and Assumed Leases to Purchaser, as provided for or contemplated by the APA, is authorized and approved pursuant to Bankruptcy Code Sections 363 and 365.

26.     The Assumed Contracts and Assumed Leases shall be deemed valid and binding and in full force and effect and assumed by the Debtors and assigned to Purchaser at the Closing or at such later time as provided in the APA, pursuant to Bankruptcy Code Sections 363 and 365.   Purchaser shall be liable for all obligations under such Assumed Contracts and Assumed Leases arising on and after the Closing Date.

27.     Pursuant to Bankruptcy Code Sections 365(b)(1)(A) and (B), and except as otherwise provided in this Order, Purchaser shall promptly pay or cause to be paid to the parties to any Assumed Contracts and Assumed Leases the requisite cure amounts, if any, set forth in the notice, including any amendments thereto existing on or before November 5, 2010, served by the Debtors on each of the parties to the Assumed Contracts and Assumed Leases (the "Cure Amounts").   The

24

Debtors shall be required to pay any cures which are in excess of such Cure Amounts. Subject to any such lower Cure Amounts which are subsequently ordered by the Court, the Cure Amounts are fixed and the non-debtor parties to the Assumed Leases and Assumed Contracts are forever bound by such Cure Amounts and each non-debtor party to an Assumed Contract or Assumed Lease is, except with respect to the Cure Amounts, forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Debtors' property any default existing as of the last date of the Sale Hearing; and, each non-debtor party to an Assumed Contract or Assumed Lease hereby is forever barred, estopped, and permanently enjoined from asserting against the Purchaser, or the Purchaser's property, any default existing as of the last date of the Sale Hearing, or any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors. Neither Purchaser nor the Debtors shall have any liability to any party on account of any rejected executory contract or unexpired leases to any party for the period subsequent to the date of rejection.

28.    All monetary defaults under the Assumed Contracts and Assumed Leases arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code Section 365(b)(2)) shall be deemed cured by payment of the Cure Amounts.

29.    Any provision in any Assumed Contract or Assumed Lease that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable.

30.    No sections or provisions of any Assumed Contract or Assumed Lease that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts or Assumed Leases as a result of the Debtors' assumption and assignment to Purchaser of the Assumed Contracts or Assumed Leases shall have

25

any force and effect with respect to the sale transaction and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code Section 365(f) and/or are otherwise unenforceable under Bankruptcy Code Section 365(e). No assignment of any Assumed Contract or Assumed Lease pursuant to the terms of the APA shall in any respect constitute a default under any Assumed Contract or Assumed Lease. The non-debtor party to each Assumed Lease and Assumed Contract shall be deemed to have consented to such assignment under Bankruptcy Code Section 365(c)(1)(B), and Purchaser shall enjoy all of the rights and benefits under each such Assumed Contract and Assumed Lease as of the applicable date of assumption without the necessity of obtaining such non-Debtor party's written consent to the assumption or assignment thereof.

31.     Purchaser has satisfied all requirements under Bankruptcy Code Sections 365(b)(1) and 365(f)(2) to provide adequate assurance of future performance under the Assumed Contracts and Assumed Leases. Purchaser shall be responsible for all post-Closing liabilities and obligations under the Assumed Contracts and Assumed Leases.

32.     The Debtors and their estates shall be relieved of any liability for any breach of any of the Assumed Contracts and Assumed Leases occurring from and after Closing, pursuant to and in accordance with Bankruptcy Code Section 365(k).

33.     Except to the extent expressly included in the Assumed Liabilities, pursuant to Bankruptcy Code Sections 105(a), 363, and 365, all persons and entities, including, without limitation, the Debtors, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental units, tax, and regulatory authorities, lenders, parties to, trustees of, or beneficiaries under any benefit plan, trade and other creditors asserting or holding any Encumbrance with respect to the Purchased Assets (whether legal or equitable, secured or unsecured, matured or

26

unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Purchased Assets to Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Encumbrance against Purchaser or any affiliate, successor or assign thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates and representatives (each of the foregoing in its individual capacity), or the Purchased Assets. To avoid doubt, the foregoing shall not prevent the Debtors, their estates, successors, or permitted assigns from pursing claims, if any, against Purchaser and/or its successors and assigns in accordance with the terms of the APA, and the foregoing shall not prejudice any other rights the Debtors have under the APA.

34.     Purchaser has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Liabilities as set forth in the APA, and Purchaser has not purchased any assets not defined as Purchased Assets. Consequently, all persons, Governmental Units (as defined in Bankruptcy Code Section 101(27)) and all holders of Encumbrances or Interests based on or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against Purchaser (or its affiliates) or the Purchased Assets to recover any Encumbrances or Interests or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the APA. All persons holding or asserting any Encumbrances or Interests in the Excluded Assets are hereby enjoined from asserting or prosecuting such Encumbrances or Interests or cause of action against Purchaser or the Purchased Assets for any liability associated with the Excluded Assets.

35.     Subject to the terms of the APA, the APA and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors, the Bank, the Creditors'

Committee and Purchaser, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates the APA and any related agreements.

36.     The failure to specifically include any particular provision of the APA or any related agreements in this Order shall not diminish or impair the effectiveness of such provision.  It is the intent of the Court, the Debtors and Purchaser that the APA and any agreement related thereto are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

37.     Except as provided by Section 35 of this Order, nothing in this Order shall alter or amend the APA and the obligations of the Debtors and Purchaser under the terms of the APA.  Any capitalized, undefined terms contained in this Order shall have the meaning ascribed thereto in the APA.

38.     This Order and the APA shall be binding on and govern the acts of all persons and entities, including without limitation, the Debtors and Purchaser, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in Chapter 7 cases if these cases are converted from Chapter 11, all creditors of the Debtors (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments related to the Purchased Assets.

39.     The provisions of this Order are non-severable and mutually dependent.

40.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the Debtors' Chapter 11 cases, or any order issued in any subsequent or converted

28

cases of the Debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the APA or the terms of this Order.

41.     Notwithstanding Bankruptcy Rules 6004, 6006, 7062, and 9021, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and Purchaser are free to close under the APA at any time, subject to the terms of the APA.  In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and Purchaser close under the APA, Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of Bankruptcy Code Section 363(m) as to all aspects of the transactions under and pursuant to the APA if this Order, including, but not limited to, the authorizations provided in this order relating to the sale of the Purchased Assets under Bankruptcy Code Section 363(b) and the sale of the Purchased Assets free and clear of Encumbrances and Interests under Bankruptcy Code Section 363(f) or any authorization contained herein is subsequently reversed or modified on appeal.

42.     The automatic stay under Bankruptcy Code Section 362(a) shall not apply to and otherwise shall not prevent the exercise or performance by an party of its rights or obligations under the APA.

43.     This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order and the APA in all respects and to decide any disputes concerning this Order, the APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the APA and this Order including, without limitation, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Purchased Assets and any Assumed Contracts and Assumed Leases and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of all Encumbrances and Interests.

29

44. The stays provided by Bankruptcy Rules 6004 and 6006 are hereby lifted and waived.

45. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) appointing a Chapter 11 Trustee in any of the Debtors' Chapter 11 cases; (b) converting the Debtors' Chapter 11 Cases to Chapter 7 cases; or (c) dismissing the Debtors' Chapter 11 Cases, and the terms and provisions of this Order shall continue in full force and effect notwithstanding the entry of such order or conversion or dismissal.

Dated: November 10, 2010

By the Court:

Michael S. McManus
United States Bankruptcy Judge

REVISED SALE ORDER