FILED
November 17, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003081911

7

RON BENDER (SBN 143364)
J.P. FRITZ (SBN 245240)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### (SACRAMENTO DIVISION)

| | |
|---|---|
| In re:<br><br>MATTERHORN GROUP, INC.,<br><br>    Debtor.<br><br>VITAFREZE FROZEN CONFECTIONS, INC.,<br><br>    Debtor.<br><br>DELUXE ICE CREAM COMPANY,<br><br>    Debtor.<br><br>☒ Affects ALL DEBTORS<br>☐ Affects only MATTERHORN GROUP, INC.<br>☐ Affects only VITAFREZE FROZEN CONFECTIONS, INC.<br>☐ Affects only DELUXE ICE CREAM COMPANY | Lead Case No. 10-39672 (MSM)<br>Jointly Administered with Case Nos. 10-39664 (MSM), and 10-39670 (MSM).<br><br>DC No. LNB-20<br><br>Chapter 11 Cases<br><br>**DEBTORS' EMERGENCY MOTION FOR APPROVAL OF COMPENSATION TO ESTATE REPRESENTATIVES FOLLOWING CLOSING OF ASSET SALE**<br><br>Hearing:<br>Date:    TBD<br>Time:    TBD<br>Place:   Department A<br>           Judge Michael S. McManus<br>           Courtroom No. 28<br>           Floor No. 7<br>           Robert T. Matsui Courthouse<br>           501 I Street<br>           Sacramento, CA 95814 |

Matterhorn Group, Inc., Vitafreze Frozen Confections, Inc., and Deluxe Ice Cream Company, the debtors and debtors in possession in the above-captioned, jointly administered Chapter 11 bankruptcy cases (collectively, the "Debtors"), hereby file this Emergency Motion (the "Emergency Motion") for approval of compensation to be paid to estate representatives following the closing of the Debtors' pending going concern asset sale to Foster Dairy Farms ("FDF").

In support of this Emergency Motion, the Debtors respectfully represent as follows:

1. The Debtors commenced their bankruptcy cases by filing voluntary petitions under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on July 26, 2010 (the "Petition Date"). The Debtors continue to operate their business, manage their financial affairs, and operate their bankruptcy estates as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. The Debtors are in the business of manufacturing the producing ice cream related products in the Western United States. The Debtors, which have approximately 31 non-union employees and 226 union employees, are collectively one of the largest independent producers of ice cream and water-ice novelty products in the United States.

3. The Debtors' primary secured creditor is Key Bank, N.A. (the "Bank"). An Official Committee of Unsecured Creditors (the "Committee") has been formed and is represented by counsel.

4. As a result of the Debtors' distressed financial predicament, the Debtors concluded that they could not survive economically or successfully reorganize on cash collateral use alone. As a result, the Debtors concluded that the only way for the Debtors to avoid a complete shut down and liquidation of their business is for the Debtors to consummate an expedited sale of their assets or to obtain millions of dollars of additional financing. Given the extent of the Debtors'

debt structure, it is not possible for the Debtors to obtain the necessary additional financing to survive beyond the early part of 2011. The Debtors therefore concluded that embarking on an expedited asset sale process is in the overwhelming best interests of the Debtors' estates and the only way to avoid a complete shut down and liquidation of the Debtors' business.

5. The Bank and the Committee supported the Debtors' sale efforts. The Bank, the Committee and the Debtors entered into a global settlement stipulation which provided for, among other things, an allocation of the sale proceeds and the estates' cash following the closing of any asset sale.

6. An auction sale of substantially all of the Debtors' assets (excluding cash and avoidance causes of action) was held on November 5, 2010. The Debtors (through their financial advisor Sherwood Partners), the Bank and the Committee all actively participated in the auction sale process. Three qualified bidders appeared at the auction sale. FDF, which has no connection to any insider of the Debtors, was deemed to be the winning bidder at the auction sale with a winning bid of $4.5 million with certain upward and downward price adjustments. The outcome of the auction sale was approved by the Court at a hearing held on November 10, 2010.

7. It now appears that the sale to FDF may close as early as Wednesday, November 24, 2010 or as late as Monday, November 29, 2010 (with FDF to determine the timing of the actual sale closing).

8. It is the expectation of the Debtors, the Bank and the Committee that following the closing of the FDF sale, the Debtors' estates would remain in Chapter 11 while, among other things, (i) avoidance causes of action are analyzed and, where appropriate, pursued; (ii) a claims analysis is performed and, where appropriate, claims objections are filed; (iii) ultimately a liquidating plan of reorganization would be proposed.

9.      As a result, following the closing of the FDF sale, while the Debtors will no longer be operating a manufacturing business, the Debtors will continue to be managing three bankruptcy estates and therefore continue to require people to serve as the representatives of the Debtors' estates to perform, among others, the following services: (i) help facilitate the closing of the asset sale to FDF, including negotiating, preparing and executing the numerous sale closing documents, exhibits and schedules; (ii) assist counsel to analyze avoidance causes of action and to serve as the Debtors' representative in connection with any related settlements and/or litigation; (iii) assist counsel to analyze claims and to serve as the Debtors' representative in connection with any claims litigation; (iv) continue preparation of all UST monthly operating reports and assist with all other filings with the UST and the Bankruptcy Court; (v) serve as the estates' representative in terms of communicating with creditors and other parties in interest; (vi) assist the estates in connection with the preparation and confirmation of a liquidating plan of reorganization and related disclosure statement; and (vii) provide assistance and information to the Bank and the Committee and other relevant parties as needed.

10.     Nathan W. Bell ("Bell"), the Debtors' current President, Chief Executive Officer and Board Chairman, has agreed to serve as the Debtors' primary estate representative on the terms set forth below. Bell will have available to him the assistance of the Debtors' current financial management team on the terms set forth below. It is the Debtors' understanding that both the Bank and the Committee support (or at least do not oppose) these terms.

11.     For serving as the Debtors' primary estate representative, Bell will receive a payment of $15,000 concurrently with the closing of the FDF asset sale. For the month of December, 2010, Bell will be paid the same $25,000 that he currently makes plus reimbursement for actual out-of-pocket expenses. For each month thereafter (i.e., commencing with January, 2011), Bell will be paid on an hourly basis at the rate of $200 per hour, with a monthly cap of

$25,000 regardless of the number of hours worked plus reimbursement for actual out-of-pocket expenses. For so long as Bell is serving as the primary estate representative, Bell will be paid for a minimum of 10 hours worked per month. Other than for the month of December, 2010 (since that involves a flat fee), Bell will file a monthly fee statement each month with the Court which provides a detail of all services performed and the amount of time spent on those services, along with the computation of fees earned. Bell will serve each such monthly fee statement on the Bank, the Committee and the United States Trustee.[1] Parties in interest will have ten days to file an objection to any such monthly fee statement. If no objection is timely filed and cannot be consensually resolved by Bell and the objecting party, Bell will be paid from the Debtors' estates the requested sum. If any objection is timely filed, the Court will resolve the objection and Bell will not be paid the disputed sum until the objection is ruled upon by the Court. Bell will continue serving as the primary estate representative unless and until he resigns (which would require him to provide the Debtors, the Bank and the Committee with at least 30 days prior written notice) or upon further order of the Court terminating his role.

12. For making herself available to assist Bell, Jennifer K. Loving ("Loving"), the Debtors' current Chief Financial Officer, will receive a payment of $7,500 concurrently with the closing of the FDF asset sale. Thereafter, Loving will be paid on an hourly basis at the rate of $70 per hour[2] plus reimbursement for actual out-of-pocket expenses. As with Bell, Loving will file a monthly fee statement each month with the Court which provides a detail of all services performed and the amount of time spent on those services, along with the computation of fees earned. Loving will serve each such monthly fee statement on the Bank, the Committee and the

---

[1] The Debtors' bankruptcy counsel will assist Bell in connection with the filing and service of his monthly fee statements.

[2] Loving currently receives an annual salary from the Debtors of $145,000.

United States Trustee.[3] Parties in interest will have ten days to file an objection to any such monthly fee statement. If no objection is timely filed and cannot be consensually resolved by Loving and the objecting party, Loving will be paid from the Debtors' estates the requested sum. If any objection is timely filed, the Court will resolve the objection and Loving will not be paid the disputed sum until the objection is ruled upon by the Court.

13. For making themselves available to assist Bell, Aimee Galindo ("Galindo"), the Debtors' current Controller, and Colleen Keith ('Keith"), the Debtors' current accounts payable employee, will be paid on an hourly basis at the rate of $40 per hour and $20 per hour respectively[4], plus reimbursement for actual out-of-pocket expenses. As with Bell and Loving, Galindo and Keith will file monthly fee statements each month with the Court which provides a detail of all services performed and the amount of time spent on those services, along with the computation of fees earned. They will serve each such monthly fee statement on the Bank, the Committee and the United States Trustee.[5] Parties in interest will have ten days to file an objection to any such monthly fee statement. If no objection is timely filed and cannot be consensually resolved by them and the objecting party, they will be paid from the Debtors' estates the requested sum. If any objection is timely filed, the Court will resolve the objection and they will not be paid the disputed sum until the objection is ruled upon by the Court.

14. Unless otherwise ordered by the Court, there will be a collective cap on the money paid to Loving, Galindo and Keith for December, 2010 of $15,000, and a collective cap of $10,000 for each month thereafter.

---

[3] The Debtors' bankruptcy counsel will assist Loving in connection with the filing and service of her monthly fee statements.

[4] Galindo currently receives an annual salary from the Debtors of $85,000, and Keith currently receives an annual salary from the Debtors of $40,000.

[5] The Debtors' bankruptcy counsel will assist Galindo and Keith in connection with the filing and service of their monthly fee statements.

15. The Debtors believe that the foregoing arrangement is in the best interests of the Debtors' estates and is designed to effectuate a smooth and efficient closing of the asset sale to FDF and the continued administration of the Debtors' bankruptcy estates.

Based upon all of the foregoing, the Debtors respectfully request that this Court enter an order approving the compensation terms and procedures outlined above and grant such other and further relief as the Court deems just and proper.

Date: November 17, 2010

LEVENE, NEALE, BENDER, YOO
& BRILL L.L.P.

/s/ Ron Bender
RON BENDER
J.P. FRITZ