2010-39672
FILED
December 13, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003130712

RON BENDER (SBN 143364)
J.P. FRITZ (SBN 245240)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; jpf@lnbyb.com

Attorneys for Chapter 11 Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
(SACRAMENTO DIVISION)**

| | |
|---|---|
| In re:<br><br>MATTERHORN GROUP, INC.,<br><br>    Debtor.<br><br>VITAFREZE FROZEN CONFECTIONS, INC.,<br><br>    Debtor.<br><br>DELUXE ICE CREAM COMPANY,<br><br>    Debtor.<br><br>☒ Affects ALL DEBTORS<br>☐ Affects only MATTERHORN GROUP, INC.<br>☐ Affects only VITAFREZE FROZEN CONFECTIONS, INC.<br>☐ Affects only DELUXE ICE CREAM COMPANY | Lead Case No. 10-39672 (MSM)<br>Jointly Administered with Case Nos. 10-39664 (MSM), and 10-39670 (MSM).<br><br>DC No. LNB-13<br><br>Chapter 11 Cases<br><br>**STIPULATED ORDER ALLOCATING SALE PROCEEDS BETWEEN KEYBANK NATIONAL ASSOCIATION AND THE DEBTORS' ESTATES**<br><br>[No Hearing Required] |

1
STIPULATED ORDER ALLOCATING SALE PROCEEDS
BETWEEN KEYBANK NATIONAL ASSOCIATION AND
THE DEBTORS' ESTATES

RECEIVED
December 09, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003130712

This Stipulation is hereby entered into on this 6th day of December, 2010 by and between Matterhorn Group, Inc., Vitafreze Frozen Confections, Inc., and Deluxe Ice Cream Company, the debtors and debtors in possession in pending, jointly administered Chapter 11 bankruptcy cases (collectively, the "Debtors"), KeyBank National Association, a National Banking Association (the "Bank"), and the Official Committee of Unsecured Creditors (the "Committee") with reference to the following:

A. The Bank and the Debtors entered into a Settlement Agreement dated September 28, 2010 (the "Settlement Agreement") that was approved by the Court on November 2, 2010, and which provided for, among other things, an allocation of the proceeds from the sale of the Debtors' assets.

B. The first sentence of Paragraph 2 of the Settlement Agreement provides as follows:

> The Bank shall be paid 85% of the Net Sale Proceeds and 15% of the Net Sale Proceeds will be retained by the Debtors' bankruptcy estates free and clear of the Bank's liens and claims except as provided by paragraphs 5 and 7 below, with "Net Sale Proceeds" being defined as the actual purchase price paid by the buyer after deducting all expenses directly related to the sale that are approved by the Bank or the Bankruptcy Court, including the fees and expenses of the Investment Banker.

C. On November 24, 2010, the Debtors consummated a sale of substantially all of their assets (excluding, among other assets, cash and avoidance causes of action) to Foster Dairy Farms ("FDF"). The total purchase price paid by FDF to the Debtors was $4,783,337.78 (the "Total Sale

Proceeds"), with this purchase price being subject to a possible reduction for a working capital adjustment of a maximum amount of $300,000. The Debtors and FDF agreed that $300,000 of the Total Sale Proceeds would be set aside and retained by the Debtors pending the outcome of the working capital adjustment issue. All of the Total Sale Proceeds are being held in a segregated account maintained by counsel to the Debtors pending further order of the Court (the "Sale Proceeds Trust Account"). Pursuant to a prior order of the Court, other than $100,000 of the Debtors' operating funds which were left in the Debtors' debtor-in-possession operating account, the balance of the Debtors' operating funds have been deposited into a second segregated account maintained by counsel to the Debtors (the "Estate Funds Trust Account").

D. The Debtors, the Bank and the Committee have engaged in discussions to quantify the amount of the Net Sale Proceeds so that the 85% portion of the Net Sale Proceeds owing to the Bank pursuant to the Settlement Agreement can be paid to the Bank.

E. After analyzing all of the facts of these cases and the issues which resulted in the closing of the Debtors' asset sale to FDF, the Debtors, the Bank and the Committee have agreed that $330,000 (inclusive of the $135,000 investment banking fee owing to Sherwood Partners LLC) is a reasonable estimate of the "expenses directly related to the sale" ("Sale Expenses") to be used to compute the Net Sale Proceeds to be divided 85% to the Bank and 15% to the Debtors' estates.

NOW, THEREFORE, THE DEBTORS, THE BANK AND THE COMMITTEE HEREBY AGREE AS FOLLOWS:

1. Until the working capital adjustment issue is resolved between the Debtors and FDF, $4,483,337.78 of the Total Sale Proceeds is available for distribution between the Bank and the Debtors' estates.

2. The amount of the Sale Expenses is $330,000.

3. After Sale Expenses of $330,000 are deducted from the $4,483,337.78 of the Total Sale Proceeds, a total of $4,153,337.78 remains (the "Net Sale Proceeds"). The Bank shall be paid forthwith $3,530,337.11 of the Total Sale Proceeds, which is computed as 85% of the Net Sale Proceeds. The $953,000.67 balance of the Total Sale Proceeds available for distribution to the Debtors' estates shall be transferred forthwith from the Sale Proceeds Trust Account to the Estate Funds Trust Account with any unpaid portion of the investment banking fees of Sherwood Partners LLC previously approved by the Court to be paid directly from said funds. The remaining $300,000 of the Total Sale Proceeds shall remain in the Sale Proceeds Trust Account until the Debtors and FDF have reached an agreement on the amount of any working capital adjustment or as ordered by the Bankruptcy Court.

4. To the extent the working capital adjustment with FDF proves to be less than $300,000, the Bank shall be paid forthwith a sum equal to 85% of the extent to which the working capital adjustment with FDF is less than $300,000, and 15% of the extent to which the working capital adjustment with FDF is less than $300,000 shall be transferred from the Sale Proceeds Trust Account to the Estate Funds Trust Account. For example, if the working capital adjustment proves to be $100,000, then (i) the Bank would be paid an additional $170,000 of the Total Sale Proceeds (computed as 85% of $200,000, which is the extent to which the working capital adjustment is less than $300,000); (ii) $30,000 would be transferred from the Sale Proceeds Trust Account to the

///

///

Estate Funds Trust Account (computed as 15% of $200,000, which is the extent to which the working capital adjustment is less than $300,000); and (iii) $100,000 would be paid to FDF.

Agreed:

LEVENE, NEALE, BENDER, YOO
& BRILL L.L.P.

/s /Ron Bender
_____
RON BENDER
Attorneys for Chapter 11 Debtors
and Debtors in Possession

Agreed:

HANSON BRIDGETT LLP

/s /Richard Adler
_____
RICHARD M. ADLER
Attorneys for KeyBank National Association

Agreed:

DOWNEY BRAND

/s /Jamie Dreher
_____
JAMIE DREHER
Attorneys for the Official Committee of
Unsecured Creditors

IT IS SO ORDERED.

Dated: December 13, 2010

By the Court

Michael S. McManus
United States Bankruptcy Judge